# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TENNESSEE
# <u>AT KNOXVILLE</u>

| | |
|---|---|
| GREG ADKISSON, et al., <br>     Plaintiffs, <br> v. <br> JACOBS ENGINEERING GROUP, INC., <br>     Defendant. | No. 3:13-CV-00505-TAV-HBG <br><br> *Lead case consolidated with* |
| KEVIN THOMPSON, et al., <br>     Plaintiffs, <br> v. <br> JACOBS ENGINEERING GROUP, INC., <br>     Defendant. | No. 3:13-CV-00666-TAV-HBG |
| JOE CUNNINGHAM, et al., <br>     Plaintiffs, <br> v. <br> JACOBS ENGINEERING GROUP, INC., <br>     Defendant. | *as consolidated with* <br><br> No. 3:14-CV-00020-TAV-HBG |
| BILL ROSE, <br>     Plaintiff, <br> v. <br> JACOBS ENGINEERING GROUP, INC., <br>     Defendant. | No. 3:15-CV-00017-TAV-HBG |
| CRAIG WILKINSON, et al., <br>     Plaintiffs, <br> v. <br> JACOBS ENGINEERING GROUP, INC., <br>     Defendant. | No.: 3:15-CV-00274-TAV-HBG |
| ANGIE SHELTON, as wife and next of kin on behalf of Mike Shelton, et al., <br>     Plaintiffs, <br> v. <br> JACOBS ENGINEERING GROUP, INC., <br>     Defendant. | No.: 3:15-CV-00420-TAV-HBG |
| JOHNNY CHURCH, <br>     Plaintiff, <br> v. <br> JACOBS ENGINEERING GROUP, INC., <br>     Defendant. | No.: 3:15-CV-00460-TAV-HBG |

| | |
|---|---|
| DONALD R. VANGUILDER, JR., <br>     Plaintiff, <br> v. <br> JACOBS ENGINEERING GROUP, INC., <br>     Defendant. | No. 3:15-CV-00462-TAV-HBG |
| JUDY IVENS, as sister and next of kin, on behalf of JEAN NANCE, deceased, <br>     Plaintiff, <br> v. <br> JACOBS ENGINEERING GROUP, INC., <br>     Defendant. | No. 3:16-CV-00635-TAV-HBG |
| PAUL RANDY FARROW, <br>     Plaintiff, <br> v. <br> JACOBS ENGINEERING GROUP, INC., <br>     Defendant. | No. 3:16-CV-00636-TAV-HBG |

**RESPONSE OF JACOBS ENGINEERING GROUP, INC. TO PLAINTIFFS'  
MOTION FOR REFERENCE OF CONSOLIDATED CASES TO MEDIATION  
AND FOR STAY OF PHASE II PROCEEDINGS**

Jacobs Engineering Group, Inc. ("Jacobs") responds herein to Plaintiffs' Motion for Reference of Consolidated Cases to Mediation and for Stay of Proceedings [Doc. 431]. Jacobs agrees with Plaintiffs that discovery and preparations for Phase II should be stayed in this case, but disagrees on why. Jacobs does not believe that court-ordered mediation is warranted at this time. Nor does Jacobs agree that its post-trial motions should be stayed. Rather, Jacob's two post-trial motions [Docs. 437-440] are the most significant issue before the Court because they may result in a new trial or judgment for Jacobs as a matter of law, jettisoning the need for Phase II entirely and rendering moot any related proceedings.

**I. THE COURT SHOULD STAY ALL OTHER PROCEEDINGS PENDING THE RESOLUTION OF JACOBS' POST-TRIAL MOTIONS.**

Jacobs' recently-filed Motion for a New Trial [Doc. 439] or Renewed Motion for Judgment and/or Motion for a New Trial Based on an Erroneous Verdict [Doc. 437] may result in an order

1

vacating the Phase I verdict findings or judgment for Jacobs as a matter of law—deferring, or eliminating the need for, proceedings relating to Phase II. Moving on to Phase II before Jacobs' post-trial motions are decided would be highly inefficient for the parties and the Court, and any mediation now would simply lay bare the very serious constitutional and practical problems Jacobs has raised in its motions.

*First*, as explained fully in Jacobs' Brief in Support of its Motion for a New Trial [Doc. 440], the verdict form proposed by Plaintiffs and implemented by the Court in the Phase I trial was fundamentally and irreparably flawed. If relied upon in Phase II of this case, it would guarantee a violation of the Seventh Amendment's reexamination clause, which provides that "no fact tried by a jury[] shall be otherwise reexamined in any Court of the United States." U.S. Const. amend. VII.

More specifically, the verdict form did not ask the jury to specify which of Plaintiffs' six disparate theories of wrongdoing it believed Plaintiffs had proven by a preponderance of the evidence. This makes it "impossible" to know "which theory of liability persuaded the jury." *Wilburn v. Maritrans GP Inc.*, 139 F.3d 350, 366 (3d Cir. 1998). In fact, it is impossible to know even whether the jury unanimously agreed that Plaintiffs proved any single theory of wrongdoing. As a result, the ambiguous verdict findings—that Jacobs (1) "failed to adhere to the terms of its contract with TVA" or the "Safety and Health Plan," (2) "failed to exercise reasonable care," and (3) that this unknown breach of the contract and failure to exercise reasonable care "was capable of causing" ten specific medical conditions, [Doc. 408 at 2–5]—cannot be relied upon in any Phase II trial on the issues of specific causation and damages. That is because to determine whether some wrongdoing specifically caused an injury and if so by how much, the jury must know what the specific wrongdoing was. *Blyden v. Mancusi*, 186 F.3d 252, 267 (2d Cir. 1999).

2

The Court cannot supply the jury in Phase II with the necessary specifics about (1) how Jacobs allegedly violated its contract with the TVA, (2) whether that specific conduct breached its duties of care, and (3) whether that breach was capable of causing Plaintiffs' injuries without having the juries in Phase II unconstitutionally "reexamine[]" the same issues that were presented and decided by the Phase I jury. Nor can the Court tell the jury in Phase II that Plaintiffs proved all or any particular subset of their six theories of wrongdoing because there is no factual basis for that assertion, and because doing so would also violate the Seventh Amendment. To determine that Plaintiffs proved all or any subset of their theories, the Court would have to act as a factfinder, violating both Jacobs' Seventh Amendment right to a jury trial and the Seventh Amendment's prohibition on any reexamination of the factual findings of the Phase I jury. *Blyden*, 186 F.3d at 267; *In re Rhone-Poulenc Rorer Inc.*, 51 F.3d 1293, 1302–04 (7th Cir. 1995) (granting mandamus relief on the ground to prevent a bifurcation plan from violating the Seventh Amendment).[1]

*Second*, as set out in Jacobs' Brief in Support of its Renewed Motion for Judgment as a Matter of Law, or in the Alternative, Motion for a New Trial Based on an Erroneous Verdict ("Renewed Motion") [Doc. 438], Jacobs is entitled to judgment under Rule 50(a)(1) because no reasonable jury would have had a legally sufficient evidentiary basis to find in favor of Plaintiffs on their negligence claims. Inefficiency aside, it goes without saying that proceeding to Phase II when Plaintiffs did not prove their Phase I case as a matter of law would constitute a manifest injustice.

---

[1] A mediation at this juncture would likely be unproductive for the same reason that a new trial is warranted—neither of the parties can possibly know whether any alleged injuries suffered by Plaintiffs could have been caused by any of Jacobs' alleged misconduct. A mediation now, in other words, would force the parties to re-litigate the issues tried in Phase I.

3

In particular, Jacobs is entitled to judgment as a matter of law on three separate grounds. To begin with, Jacobs cannot be held liable on account of its alleged misconduct because it is protected by derivative governmental immunity. It was undisputed at trial that the relevant agreements contain only broad guidelines for Jacobs to follow and that its conduct did not exceed its delegated authority. As a result, no reasonable jury could have found that Jacobs' alleged negligent conduct violated any contractual provisions governing its work at the Kingston Site.

In addition, Plaintiffs did not prove that Jacobs breached any legal duty it owed to Plaintiffs. Plaintiffs could not show that Jacobs owed them a duty to prevent against all exposure to fly ash at the Kingston Site. Regarding the duties that Jacobs *did* owe to Plaintiffs—duties to exercise reasonable care in performing certain work at the Site that was necessary to protect Plaintiffs from a foreseeable risk of the injuries alleged—Plaintiffs failed to offer requisite expert proof that Jacobs breached these professional duties of care.

Finally, Plaintiffs did not and could not have proven causation as a matter of law. It is hornbook law that to recover for a claim of negligence, a plaintiff must show some reasonable connection between the alleged act of a defendant and the plaintiff's alleged injury. *See, e.g.*, *Bain v. Wells*, 936 S.W.2d 618, 624–25 (Tenn. 1997). Plaintiffs presented *no evidence* tying any of Jacobs' alleged misconduct to Plaintiffs' alleged harms. Instead, Plaintiffs tried to prove general causation by showing merely that fly ash is capable of causing harm to humans. If that were true, Jacobs could have become liable for Plaintiffs' alleged injuries as soon as it signed its contract with the Tennessee Valley Authority to assist with the clean-up of the Kingston Site.

In addition to granting judgment as a matter of law for Jacobs on Plaintiffs' negligence claims, the Court could also order a new trial on the ground that the jury reached a seriously

4

erroneous verdict as to Jacobs' immunity; breach of the relevant duty of care; and general causation.

In sum, there is no reason to put the cart before the horse. The Court should first decide whether the verdict findings from Phase I can stand in compliance with the law and the Constitution. Those threshold questions should be decided before the Court and the parties expend the considerable expense of preparing for further proceedings.

## II. COURT-ORDERED MEDIATION IS NOT LIKELY TO BE PRODUCTIVE AT THIS TIME.

Even if Jacobs is not entitled to any relief under Rule 50(a) or Rule 59, a mediation at this stage is unlikely to be fruitful.

### A. Plaintiffs Must Produce Extensive Discovery Regarding Their Alleged Injuries Before The Parties Can Participate In A Meaningful Mediation.

Contrary to their assertions, Plaintiffs have not yet provided Jacobs with information sufficient information to evaluate the claims or alleged damages at issue. Jacobs does not have updated information or records relating to the medical conditions or damages alleged by the majority of the Plaintiffs. Jacobs has never even been told which particular medical conditions many of them are alleging. Most of the Plaintiffs have not been deposed and, in any case, Jacobs still needs updated information regarding their current or most recent employment. Additionally, none of the Plaintiffs' treating physicians have been deposed. Not to mention that as to the few Plaintiffs for whom Jacobs has taken adequate discovery to evaluate their claims, the testimony and medical records indicated that their illnesses could not have been related to fly ash exposure and, in many instances, entirely predated any work at the Site.

Plaintiffs have proposed informally providing information to evaluate Plaintiffs' alleged injuries prior to or during mediation. But this is not a workable solution. A substantial portion of

5

the information and documents at issue were requested years ago or should have been provided with Plaintiffs' initial disclosures or supplemental Rule 26 disclosures. The likely reason that this information has not yet been provided is that an evaluation of the individual Plaintiffs' conditions is not as straight-forward as their motion suggests. It would take months just to obtain updated copies of Plaintiffs' medical records, even in cases where the individuals' medical providers have already been identified. For individuals whose treating physicians have not yet been disclosed, it would almost certainly take longer. There is no basis for concluding that this exchange of information would occur more efficiently through informal discovery, rather than if the parties were to conduct discovery in the normal manner, in accordance with the Federal Rules of Civil Procedure.

Even if Plaintiffs were to finally identify the injuries that each is alleging and provide all of their complete medical and employment records, it is highly likely that there would still be serious unanswered questions regarding the nature and severity of many of the Plaintiffs' medical conditions. In many instances, individual Plaintiffs were not regularly evaluated by medical professionals even during the relevant period; Jacobs is already aware of several who individuals went years in between visits to any medical professional. Additionally, Plaintiffs' attorneys have also suggested that some of the Plaintiffs have not been able to obtain the medical care that they need because they cannot pay for it. For those Plaintiffs, there might not be any medical records identifying their alleged medical conditions. In all such circumstances, it would be virtually impossible to determine, just from a review of the medical records, the timing of the onset of these Plaintiffs' conditions, their progressions, or their prognoses. For all such Plaintiffs, additional discovery including further medical evaluations will likely be needed in order to evaluate their claims, both for trial and for purposes of mediation.

In short, without formal discovery into all of Plaintiffs' alleged injuries, Jacobs' assessments of this action are not likely to change.

### B. This Action Is Distinguishable From Prior Cases In Which The Court Ordered Parties To Mediate.

In their motion for reference to mediation, Plaintiffs argue that when the Court ordered mediation in *In re: Tennessee Valley Auth. Ash Spill Litigation*, 2012 WL 12877389, at *1-2 (E.D. Tenn. Nov. 20, 2012) (the "*Spill Litigation*"), that litigation was in a "similar posture as this case." [Doc. 431 at 3.] But Plaintiffs' analogy is belied by their own assertions and ignores critical differences between this action and this Court's other litigation relating to the Kingston site spill.

*First*, there were no-post trial motions on file when the Court ordered mediation in the *Spill Litigation*. Here, however, Jacobs has raised significant legal and constitutional issues that deserve the Court's attention, and that as explained above, could fundamentally transform the trajectory of this case.

*Second*, the *Spill Litigation* involved very different types of claims and alleged damages. In those cases, the plaintiffs asserted negligence, trespass, and/or private nuisance claims relating to property damage caused by the Kingston ash spill. *Id*. at *1. In Phase I, the Court found that TVA had caused the failure of the coal ash containment dike, and that TVA would, therefore, be liable to the plaintiffs, provided they were able to prove, individually, "tract-specific causation." *Id*. In short, plaintiffs needed to present relatively straight-forward proof that they owned property that was damaged by the fly ash spill. Moreover, because their claims involved only damage to or loss of use of property, there were a limited range of possible outcomes, in terms of damages, in each case. Thus, it was possible for the parties to evaluate the cases for purposes of mediation, even where discovery had not yet commenced or had not been completed. *Id*. at *2.

7

Needless to say, this action is far more complex and presents an entirely different range of issues. As an initial matter, according to Dr. Terry, Plaintiffs' reported medical conditions, which fall into ten different *categories*, range in severity from life-threatening cancers and heart conditions to relatively minor respiratory and skin issues. As a result, the range of possible outcomes, in terms of damages, will vary widely from Plaintiff to Plaintiff. And as described at *supra* at 5-7, Jacobs will not have any way to evaluate that issue until further discovery takes place.

Moreover, there are still substantial hurdles that every Plaintiff here must clear that were not present in the *Spill Litigation*. Here, each individual Plaintiff would be required to prove in Phase II, through expert testimony, that he or she has one or more of the particular medical conditions alleged. They would also be required to prove, through expert testimony, that those conditions were, in fact, caused by exposures to fly ash, and that *those exposures* were attributable to some wrongdoing by Jacobs (an issue that Plaintiffs did not even begin to address in Phase I). [*See generally* Doc. 438 at 13-17.] In contrast to the plaintiffs' ability to prove property damage in *the Spill Litigation*, Plaintiffs' ability here to prove specific causation and their alleged injuries is still very much in doubt.

## **CONCLUSION**

For all of these reasons, Jacobs respectfully requests that the Court stay any and all Phase II proceedings until it decides Jacobs' Motion for a New Trial and Motion for Judgment as a Matter of Law and/or Motion for a New Trial Based on an Erroneous Verdict. Jacobs further opposes Plaintiffs' motion to order the parties to proceed in a court-ordered mediation at this time.

Respectfully submitted,

**NEAL & HARWELL, PLC**

By: /s/ James F. Sanders
James F. Sanders (No. 005267)
jsanders@nealharwell.com
J. Isaac Sanders (No. 029372)
isanders@nealharwell.com
Marie T. Scott (No. 032771)
mscott@nealharwell.com
1201 Demonbreun Street
Suite 1000
Nashville, Tennessee 37203
Telephone: (615) 244-1713
Facsimile: (615) 726-0573


**GIBSON, DUNN & CRUTCHER LLP**

Theodore J. Boutrous, Jr. (*pro hac vice* pending)
tboutrous@gibsondunn.com
Theane Evangelis (*pro hac vice* pending)
tevangelis@gibsondunn.com
Jeremy S. Smith (*pro hac vice* pending)
jssmith@gibsondunn.com
333 South Grand Avenue
Los Angeles, California 90071-3197
Telephone: (213) 229-7000
Facsimile: (213) 229-7520


*Attorneys for Defendant*
*Jacobs Engineering Group, Inc.*

9

## CERTIFICATE OF SERVICE

I hereby certify that on this the 10th day of December, 2018, I have electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system. Notice of this filing will be sent to all parties and counsel of record by operation of the Court's CM/ECF system. All other parties will be served by regular U.S. Mail. Parties may access this filing through the Court's electronic filing system.

                                                    /s/ James F. Sanders