UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| GREG ADKISSON, et al., <br>     Plaintiffs, <br> v. <br> JACOBS ENGINEERING GROUP, INC., <br>     Defendant. | ) ) ) ) ) ) ) ) | No.: 3:13-CV-505-TAV-HBG <br><br> *Lead Case Consolidated with* |
| KEVIN THOMPSON, et al., <br>     Plaintiffs, <br> v. <br> JACOBS ENGINEERING GROUP, INC., <br>     Defendant. | ) ) ) ) ) ) ) ) | No.: 3:13-CV-666-TAV-HBG <br><br> as c*onsolidated with* |
| JOE CUNNINGHAM, et al., <br>     Plaintiffs, <br> v. <br> JACOBS ENGINEERING GROUP, INC., <br>     Defendant. | ) ) ) ) ) ) ) | No.: 3:14-CV-20-TAV-HBG |
| BILL ROSE, <br>     Plaintiff, <br> v. <br> JACOBS ENGINEERING GROUP, INC., <br>     Defendant. | ) ) ) ) ) ) ) ) | No.: 3:15-CV-17-TAV-HBG |
| CRAIG WILKINSON, et al., <br>     Plaintiffs, <br> v. <br> JACOBS ENGINEERING GROUP, INC., <br>     Defendant. | ) ) ) ) ) ) ) ) | No.: 3:15-CV-274-TAV-HBG |
| ANGIE SHELTON, as wife and next of <br> Kin on behalf of Mike Shelton, et al., <br>     Plaintiffs, <br> v. <br> JACOBS ENGINEERING GROUP, INC., et al., <br>     Defendants. | ) ) ) ) ) ) ) ) ) | No.: 3:15-CV-420-TAV-HBG |

| | |
|---|---|
| JOHNNY CHURCH,<br>      Plaintiff,<br>v.<br>JACOBS ENGINEERING GROUP, INC., et al.,<br>      Defendants. | No.: 3:15-CV-460-TAV-HBG |
| DONALD R. VANGUILDER, JR.,<br>      Plaintiff,<br>v.<br>JACOBS ENGINEERING GROUP, INC.,<br>      Defendant. | No.: 3:15-CV-462-TAV-HBG |

## PLAINTIFFS' PROPOSED PHASE II TRIAL PLAN

**I.    ISSUES FOR PHASE II TRIALS**

As the Court's Bifurcation Order says:

> Phase II will involve issues and evidence relating to:
> (1) specific causation with respect to individual plaintiffs;
> (2) each plaintiff's alleged injuries; and
> (3) the extent to which individual plaintiffs are entitled to damages.

[Doc. 136 at 6]. None of these issues will require the jury to reexamine any of the questions decided in the Phase I trial.

In addition, the entitlement of each plaintiff to punitive damages and the amount of punitive damages to be awarded should be heard in the Phase II trials. It is clear from the evidence presented in Phase I that Plaintiffs are entitled to have a jury decide the punitive damages issue. There was ample evidence of malicious, intentional, fraudulent and reckless conduct on the part of Jacobs.

While some of the same evidence about Defendant's reprehensible conduct presented in Phase I would be presented for punitive damages in Phase II, Phase II would not require the reexamination of the questions presented to the jury in Phase I. In Phase II for punitive damages the question presented to the jury would be whether Plaintiff proved "by clear and convincing evidence that the defendant … acted maliciously, intentionally, fraudulently or recklessly." Tenn.

2

Code Ann. § 23-39-104(a)(1). The jury in Phase II would not be asked whether Defendant breached its duties owed to Plaintiffs under Plaintiffs' negligence cause of action, as it was in Phase I, and there would be no possibility of inconsistent verdicts on the same issues. It is certainly possible that a Phase II jury could find that conduct for which Jacobs was held liable in Phase I does not rise to the level required for punitive damages in Phase II, but this is a possibility in every trial with punitive damages.

In any event, Jacobs has waived any Seventh Amendment objections to having punitive damages heard in Phase II. During the September 20, 2018, Status Conference when Plaintiffs requested the issue of eligibility for punitive damages to be tried in Phase I and specifically discussed the potential Seventh Amendment issues of trying them in Phase II. Jacob's counsel waived any objection. [Exhibit 1, Excerpts from Status Conference Proceedings Before the Honorable Thomas A. Varlan, September 20, 2018, at 6-12].

Under Tenn. Code Ann. § 23-39-104(a)(2) and (3), the Court would bifurcate the trial to first determine "whether compensatory damages are to be awarded and in what amount and by special verdict whether … defendant's conduct was malicious, intentional, fraudulent or reckless." If the jury finds that the Defendant engaged in such conduct, "then the court shall promptly commence an evidentiary hearing in which the jury shall determine the amount of punitive damages, if any." Tenn. Code Ann. § 29-39-104(a)(4) sets out the evidence to be considered by the jury in determining the amount of punitive damages.[1]

Finally, punitive damages can be sought for each Plaintiff in Phase II, because there is no prohibition under Tennessee law on punitive damages awards for multiple plaintiffs in a mass tort

---

[1] There should not be any facts to be heard regarding the punitive damages cap in § 29-39-104(5) and (7), because the Sixth Circuit Court of Appeals recently found the cap violates the individual right to a trial by jury set forth in the Tennessee Constitution. *Lindenberg v. Jackson National Life Insurance Company*, Nos. 17-6034/6079, 2018 WL 6712507, at *10 (6th Cir., Dec. 21, 2018).

case. *See Cathey v. Johns-Manville Sales Corp.*, 776 F.2d 1565, 1571 (6th Cir. 1985) (rejecting a due process violation argument by defendant potentially subject to multiple punitive damages awards). However, under Tenn. Code Ann. § 29-39-104(a)(4), one factor the jury can consider in determining the amount of punitive damages in any particular case is "whether, and the extent to which, defendant has been subjected to previous punitive damage awards based upon the same wrongful act."

## II. PROPOSED PROCEDURE FOR PHASE II

Now that the Phase I trial has been completed on common issues applicable to all the *Adkisson* consolidated cases, a new case management approach is needed for the individual issues in Phase II. There are 52 ash spill cleanup worker Plaintiffs suing for personal injuries, including 3 who are deceased, and 19 spouses suing for loss of consortium (one spouse, Ms. Angie Shelton, is also suing as next of kin of deceased, Mr. Mike Shelton). Given that the loss of consortium claims are dependent upon the worker personal injury claims and would be tried together, there are 52 personal injury cases for trial. Plaintiffs are certain the Court and Defendant would agree that a trial of all 52 cases at once would be unwieldy and confusing to the jury. On the other hand, it would create undue delay for the Plaintiffs, cause excessive expense for the Parties, and waste the Court's resources to conduct 52 separate trials. Plaintiffs' proposal seeks to balance these two opposite approaches.

Pursuant to Fed. R. Civ. P. 42, the Court has broad discretion in how to consolidate or separate cases for trial. Plaintiffs considered proposing a bellwether approach, but the numbers of Plaintiffs are not so large that the Court would likely find this approach warranted. *See Auchard v. Tennessee Valley Authority*, No. 3:09–CV–54, 2011 WL 444845, *2-3 (E.D. Tenn. Feb. 1, 2011). However, Plaintiffs believe it would be beneficial for the Parties and the Court and would

"expedite and economize" pursuant to Fed. R. Civ. P. 42(b), to split the trials into manageable groups and to phase further discovery so that it would focus on each group as its trial date approaches rather than being scattershot for all the Plaintiffs at the same time.

Based on the Phase I jury verdict on general causation, Plaintiffs propose that Plaintiffs be grouped for trial by disease type found to be caused by exposure to fly ash. This would allow for the use of the same expert witnesses and similar medical proof to be presented for specific causation for each Trial Group to provide efficiencies for the Parties and reduce confusion by the juries.

The jury in Phase I found that 10 types of diseases suffered by Plaintiffs can be caused by exposure to fly ash. Further grouping of some of these types of diseases is possible where the same medical experts may be involved with expert testimony about more than one disease type. For instance, Plaintiffs believe that lung cancer, asthma, chronic obstructive pulmonary disease, and the respiratory conditions in the tenth finding of the jury could be combined so that the Plaintiffs suffering primarily from these lung diseases can be joined in one trial with the same expert witnesses testifying. Similarly, Plaintiffs believe non-melanoma skin cancer and allergic contact dermatitis (skin allergy) can be combined, as could hypertension and coronary artery disease. Using these combined groupings, the entire 52 cases could be divided into 5 Trial Groups for 5 trials. Where there are only 1 or 2 Plaintiffs with one of the 10 diseases or where some Plaintiffs suffer from more than one of the diseases, it would be more efficient to group their cases with others for trial, so it may be possible to resolve all 52 cases with as few as 4 trials. Conversely, if one or more of the Trial Groups is too large, so that the trial would be too lengthy and the jury would be confused, the Trial Groups could be split.

5

If the Court adopts this approach, Plaintiffs can provide the Court with the proposed Trial Groups and the individual Plaintiffs to be assigned to each Group within 30 days. Plaintiffs propose that the Court schedule the first two trials approximately one year from now with a discovery schedule and expert disclosure schedule focusing on the Plaintiffs in those two trials. Additional discovery may be necessary on Plaintiffs' punitive damages claims, but this will not involve more than one or two depositions and will apply to all the cases. Plaintiffs will cooperate with Defendant is drafting a proposed scheduling order that will provide for expert disclosures, *Daubert* motions, and dispositive motions for the first two trials based on the Court's standard scheduling order.

Plaintiffs would suggest a limitation on the number of depositions to be taken based on the number of Plaintiffs in the first two Trial Groups. Discovery for other Plaintiffs should be stayed until the first two trials are completed, at which time, the schedules can be set for the remaining trials. If discovery is not stayed for the remaining Plaintiffs, scattershot discovery for all the Plaintiffs would overwhelm the ability of the Parties to simultaneously prepare for the first trials and participate in the discovery of the remaining Plaintiffs. When Plaintiffs provide the Court with the proposed Trial Groups, they will suggest which of the Groups should be tried in the first two trials.

Entitlement to punitive damages would be litigated in each trial, as would the amount of punitive damages, if the jury finds for Plaintiffs on this issue. Punitive damages could be awarded to each Plaintiff in each trial, but, as discussed above, the jury in subsequent trials would be instructed that it can consider, among the other factors, "whether, and the extent to which, defendant has been subjected to previous punitive damage awards based upon the same wrongful act." Tenn. Code Ann. § 29-39-104(a)(4).

Assuming these cases do not settle beforehand in mediation, the first two trials will provide the Parties with more information about the strength and the value of the cases and will likely promote further settlement discussions. Finally, Plaintiffs believe that this relatively simple proposal furthers the goal of the federal courts "to secure the just, speedy, and inexpensive determination" of these actions. Fed. R. Civ. P. 1.

Respectfully submitted.

*/s/ Gary A. Davis*
Gary A. Davis, TN. Bar No. 009766
James S. Whitlock, NC Bar No. 34303
(*admission Pro Hac Vice*)
Davis & Whitlock, P.C.
21 Battery Park Ave., Suite 206
Asheville, NC 28801
T: (828) 622-0044
F: (828) 398-0435
gadavis@enviroattorney.com
jwhitlock@enviroattorney.com

James K. Scott
Keith D. Stewart
John Tyler Roper
Market Street Law, PLLC
625 Market Street, 14th Floor
Knoxville, TN 37902
T: (865) 437-5081
F: (866) 542-1741
jimscott264@gmail.com
keithstewart@gmail.com
tylerroperlaw@gmail.com

John B. Dupree
616 W. Hill Ave, 2nd Floor
Knoxville, TN 37902
T: (865) 223-5184
john.dupree@knoxtnlaw.com

Jeffrey E. Friedman, Ala. Bar No. asb-6868-n77j
(admission *Pro Hac Vice*)
Friedman, Dazzio, Zulanas & Bowling, PC
3800 Corporate Woods Drive

Birmingham, AL 35242
T: (205) 278-7000
F: (205) 278-7001
jfriedman@friedman-lawyers.com

*Attorneys for Plaintiffs*

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on January 4, 2019, a copy of the foregoing was filed electronically. Notice of filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access the filing through the Court's electronic filing system.

*/s/Gary A. Davis*
Attorney for Plaintiffs