**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TENNESSEE**
**AT KNOXVILLE**

| | |
|---|---|
| GREG ADKISSON, et al., Plaintiffs, v. JACOBS ENGINEERING GROUP, INC., Defendant. | No. 3:13-CV-00505-TAV-HBG<br>*Lead case consolidated with* |
| KEVIN THOMPSON, et al., Plaintiffs, v. JACOBS ENGINEERING GROUP, INC., Defendant. | No. 3:13-CV-00666-TAV-HBG |
| JOE CUNNINGHAM, et al., Plaintiffs, v. JACOBS ENGINEERING GROUP, INC., Defendant. | *as consolidated with*<br>No. 3:14-CV-00020-TAV-HBG |
| BILL ROSE, Plaintiff, v. JACOBS ENGINEERING GROUP, INC., Defendant. | No. 3:15-CV-00017-TAV-HBG |
| CRAIG WILKINSON, et al., Plaintiffs, v. JACOBS ENGINEERING GROUP, INC., Defendant. | No.: 3:15-CV-00274-TAV-HBG |
| ANGIE SHELTON, as wife and next of kin on behalf of Mike Shelton, et al., Plaintiffs, v. JACOBS ENGINEERING GROUP, INC., Defendant. | No.: 3:15-CV-00420-TAV-HBG |
| JOHNNY CHURCH, Plaintiff, v. JACOBS ENGINEERING GROUP, INC., Defendant. | No.: 3:15-CV-00460-TAV-HBG |

| | | |
|---|---|---|
| DONALD R. VANGUILDER, JR.,<br>Plaintiff,<br>v.<br>JACOBS ENGINEERING GROUP, INC.,<br>Defendant. | ) | No. 3:15-CV-00462-TAV-HBG |
| JUDY IVENS, as sister and next of kin,<br>on behalf of JEAN NANCE, deceased,<br>Plaintiff,<br>v.<br>JACOBS ENGINEERING GROUP, INC.,<br>Defendant. | ) | No. 3:16-CV-00635-TAV-HBG |
| PAUL RANDY FARROW,<br>Plaintiff,<br>v.<br>JACOBS ENGINEERING GROUP, INC.,<br>Defendant. | ) | No. 3:16-CV-00636-TAV-HBG |

**BRIEF IN SUPPORT OF JACOBS ENGINEERING GROUP, INC.'S MOTION FOR CERTIFICATION OF ORDER FOR INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(b)**

## TABLE OF CONTENTS

Page

INTRODUCTION & BACKGROUND ........ 1

ARGUMENT ........ 2

A. The Order Presents Controlling Questions of Law. ........ 2

B. There Are Substantial Grounds for Differences of Opinion. ........ 3

1. Question 1: When a District Court Should Intervene to Avoid a Seventh Amendment Violation. ........ 4

2. Question 2: Whether a District Court Can Avoid a Seventh Amendment Violation by "Reconciling" the Juries' Findings in Phase I and Phase II. ........ 6

C. An Immediate Appeal Will Materially Advance the Ultimate Termination of This Litigation. ........ 11

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Allegheny Int'l, Inc. v. Allegheny Ludlum Steel Corp.*,
920 F.2d 1127 (3d Cir. 1990)....................5

*Atlantic & Gulf Stevedores, Inc. v. Ellerman Lines, Ltd.*,
369 U.S. 355 (1962)....................8

*In re Baker & Getty Fin. Servs., Inc.*,
954 F.2d 1169 (6th Cir. 1992)....................11

*Black v. Boyd*,
248 F.2d 156 (6th Cir. 1957)....................4

*Blyden v. Mancusi*,
186 F.3d 252 (2d Cir. 1999)....................1, 5

*Carr v. Wal-Mart Stores, Inc.*,
312 F.3d 667 (5th Cir. 2002)....................8

*Couch v. Telescope Inc.*,
611 F.3d 629 (9th Cir. 2010)....................7

*Elrod v. Burns*,
427 U.S. 347 (1976)....................5

*Ennix v. Clay*,
703 S.W.2d 137 (Tenn. 1986)....................8

*Gasoline Prods. Co. v. Champlin Ref. Co.*,
283 US 494 (1931)....................1

*Harris v. Niagara Mohawk Pwr. Corp.*,
252 F.3d 592 (2d Cir. 2001)....................8

*Hiltgen v. Sumrall*,
47 F.3d 695 (5th Cir. 1995)....................3

*Kraus v. Bd. of Cty. Rd. Comm'rs*,
364 F.2d 919 (6th Cir. 1966)....................11

*In re Lee Way Holding Co.*,
1992 WL 44845 (6th Cir. Mar. 4, 1992)....................4

*Local 783 v. General Elec. Co.*,
471 F.2d 751 (6th Cir. 1973) ....................................................................................4

*Loughridge v. Chiles Power Supply Co., Inc.*,
431 F.3d 1268 (10th Cir. 2005) ................................................................................8

*Martin v. Behr Dayton Thermal Prod. LLC*,
896 F.3d 405 (6th Cir. 2018) ....................................................................................5

*Overstreet v. Lexington-Fayette Urban Cty. Gov't*,
305 F.3d 566 (6th Cir. 2002) ..............................................................................5, 12

*Overstreet v. Shoney's, Inc.*,
4 S.W.3d 694 (Tenn. Ct. App. 1999).........................................................................9

*Reese v. BP Exploration, Inc.*,
643 F.3d 681 (9th Cir. 2011) ....................................................................................4

*Reliance Ins. Co. v. Liberty Mut. Ins. Co.*,
497 S.W.2d 885 (Tenn. 1973).....................................................................................9

*In re Rhone-Poulenc Rorer, Inc.*,
51 F.3d 1293 (7th Cir. 1995) ................................................................................4, 7

*Russell v. Atlantic & Gulf Stevedores*,
1980 A.M.C. 2922 (5th Cir. 1980)............................................................................11

*In re Trump*,
874 F.3d 948 (6th Cir. 2017) ................................................................................3, 7

*In re Union Nacional De Trabajadores*,
502 F.2d 113 (1st Cir. 1974).......................................................................................4

*Van Meter v. Barr*,
976 F.2d 1 (D.C. Cir. 1992).......................................................................................11

*Wal-Mart Stores, Inc. v. Dukes*,
131 S. Ct. 2541 (2011)...............................................................................................10

**Constitutional Provisions**

U.S. Const. amend. VII...............................................................................................10

**Statutes**

28 U.S.C. § 1292(b) ...........................................................................................2, 3, 11

28 U. S. C. § 2072(b) ...................................................................................................10

Tenn. Code Ann. § 20-9-503 .......................................................................................................9

**Other Authorities**

2 Tenn. Cir. Ct. Prac. § 26:3 ................................................................................................8, 9

3 Fed. Proc., Lawyers Ed. § 3:212 (2010) ...........................................................................7

## INTRODUCTION & BACKGROUND

The Court's recent order presents important questions about when a court should intervene to avoid an impending violation of a party's Seventh Amendment rights and whether any such violation can be avoided by this Court "reconcil[ing]" the findings of two different juries to "effectuate liability." Order at 17, 20.

As the Court's order explains, Jacobs believes that without vacating the Phase I verdict, the Phase II trials will be a "lose-lose situation." The problem stems from the Phase I jury verdict form, which did not require the jury to specify which of Plaintiffs' six different theories of negligence were proven at trial. In bifurcated proceedings, such as these, Jacobs believes a Phase II jury cannot be "left in the dark as to which actions toward which plaintiffs had been found to be" negligent and then be "expected" to deduce whether that (unknown) wrongdoing caused a specific injury. *Blyden v. Mancusi*, 186 F.3d 252, 267 (2d Cir. 1999). As the Supreme Court explained, a second jury cannot possibly "fix the amount of damages," if the first jury's verdict does not establish the basic facts, such as what was the wrongdoing. *Gasoline Prods. Co. v. Champlin Ref. Co.*, 283 US 494, 499 (1931). The Court recognized in its order that it cannot tell the Phase II juries which of Plaintiffs' six theories the Phase I jury believed had been proven by a preponderance of the evidence because it is impossible to know that. And the Seventh Amendment prohibits the Phase II juries and the Court from re-deciding which of those six theories constituted negligence.

In its decision, the Court disagreed that this really is a "lose-lose situation" for two reasons. First, the Court held that Jacobs' motion for a new trial is "premature" because "[t]here is clearly no Reexamination Clause violation right now" and that any potential violation "will more appropriately be analyzed on a fully developed record." Order at 3, 11, 13. Second, the Court

held that if there is an "inconsistency between [the] verdicts" in Phase I and II, the Court can "reconcile[]" any inconsistent findings of the different juries without violating the Seventh Amendment. *Id.* at 17.

As explained below, both of these issues are legal (not factual), and there are substantial grounds for differences in opinion. Jacobs respectfully submits that these issues should therefore be resolved now, before the parties, the Court, and potentially dozens of jurors expend enormous time and resources to hold numerous Phase II trials. Accordingly, Jacobs requests that the Court certify its order for interlocutory appellate review under 28 U.S.C. section 1292(b).

## ARGUMENT

Section 1292 allows a district court to certify an order for review by an appellate court if: (1) the order involves a "controlling question of law"; (2) there is "substantial ground for difference of opinion" as to the controlling question; and (3) "an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). All three criteria are met here.

### A. The Order Presents Controlling Questions of Law.

When a court should intervene to avoid a potential violation of a party's Seventh Amendment rights and whether a violation of the reexamination clause can be avoided by "reconciling" the verdicts of different juries are both questions of law.

The Court's view is that it would be better to examine a potential Seventh Amendment violation with "a fully developed record." Order at 3, 11, 13. There is no dispute that a Seventh Amendment violation has not occurred yet. And although there are numerous factual disputes between the parties—*e.g.*, whether Plaintiffs' harms were caused by Jacobs or even exposure to fly ash—none of those disagreements affect the purely legal question of whether it is appropriate

to take action now to prevent a violation of Jacobs' Seventh Amendment rights.

Similarly, there are no factual disputes relevant to whether a court can "reconcile[]" potentially inconsistent verdicts of different juries from different phases of a bifurcated case. In its order, the Court states it can "reconcile[]" potentially inconsistent verdicts by two different juries on the same cause of action by applying the rule from "ordinary" "single jury case[s]"—put differently, that the Court can "adopt a view of the case that makes the jury's answers consistent." Order at 17 (quoting *Hiltgen v. Sumrall*, 47 F.3d 695, 701 (5th Cir. 1995)). As the Court recognizes, there appears to be no precedent for such "reconcil[iation]" in a bifurcated case with two separate juries like this one. *Id.* And whether that novel approach will itself violate the Constitution is purely a legal question.

These questions are "controlling" because their resolution "could materially affect the outcome of the case." *In re Trump*, 874 F.3d 948, 951 (6th Cir. 2017). If the Sixth Circuit agrees with Jacobs that a district court should prevent a Seventh Amendment violation before it occurs and agrees that the Court will not be able to "reconcile" the verdicts of the Phase I and Phase II juries by applying rules relevant to single-jury cases, the Phase I verdict will be vacated and numerous Phase II trials will not take place. The parties and the Court can then chart a course forward that efficiently provides Plaintiffs with their day in court while protecting Jacobs' rights under the Constitution.

**B. There Are Substantial Grounds for Differences of Opinion.**

There are also "substantial ground[s] for difference of opinion" with the Court's rulings on (1) when it is appropriate to intervene to avoid a violation of the Seventh Amendment, and (2) whether a violation of the Seventh Amendment can be avoided by the Court "effectuat[ing] liability" by "reconcil[ing]" the findings of two different juries. 28 U.S.C. § 1292(b); *see also In*

*re Trump*, 874 F.3d at 952 (quoting *Reese v. BP Exploration, Inc.*, 643 F.3d 681, 688 (9th Cir. 2011)).

**1. Question 1: When a District Court Should Intervene to Avoid a Seventh Amendment Violation.**

There are substantial grounds for difference of opinion as to whether intervention is required now, before the case proceeds to Phase II trials, or whether resolution of the Seventh Amendment issue can await the conclusions of the Phase II trials. The Court held that because "[t]here is clearly no Reexamination Clause violation right now," any potential violation would be "more appropriately be analyzed on a fully developed record." Order at 3, 11, 13.

The Seventh Circuit disagrees. In *In re Rhone-Poulenc Rorer, Inc.*, the Seventh Circuit determined that whether there will be a Seventh Amendment violation as a result of a bifurcated trial is so serious that it warranted mandamus review *before* the violation had occurred. 51 F.3d 1293, 1303 (7th Cir. 1995). Indeed, "[t]he protection of the right conferred by the Seventh Amendment to trial by jury in federal civil cases is a traditional office of the writ of mandamus." *Id.*

The Sixth Circuit and others agree that the denial of party's "right of trial by jury" is an "exceptional situation in which it would be appropriate to review the ruling on a petition for mandamus" *before* the defendant has been forced to conduct a trial potentially in violation of the Seventh Amendment. *Local 783 v. General Elec. Co.*, 471 F.2d 751, 754 (6th Cir. 1973); *Black v. Boyd*, 248 F.2d 156, 160 (6th Cir. 1957) (same); *see also In re Lee Way Holding Co.*, 1992 WL 44845, at *1 (6th Cir. Mar. 4, 1992) (considering an interlocutory appeal under section 1292(b) regarding whether a bankruptcy court may conduct a jury trial). As the First Circuit explained, "there is no doubt that mandamus is appropriate if a jury trial is being wrongfully denied, *even . . . when the decision whether such right exists is a close or complicated one*." *In re Union Nacional*

*De Trabajadores*, 502 F.2d 113, 115–16 (1st Cir. 1974) (emphasis added), *rev'd on other grounds*, 527 F.2d 602 (1st Cir. 1975) (per curiam); *see also Allegheny Int'l, Inc. v. Allegheny Ludlum Steel Corp.*, 920 F.2d 1127, 1134 (3d Cir. 1990) (acknowledging that the "seventh amendment entitlement to a jury trial is a fundamental right that is generally protectable through mandamus").

Similarly, a violation of the party's "constitutional rights" typically constitutes "irreparable harm" for an injunction to prevent the violation from occurring in the first place. *Overstreet v. Lexington-Fayette Urban Cty. Gov't*, 305 F.3d 566, 578 (6th Cir. 2002) (collecting cases). The courts do not wait for the violation to occur. *See, e.g.*, *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (affirming injunction before any infringement because "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury").

The Second Circuit's decision in *Blyden* also supports the view that it is better to seek appellate guidance before the constitutional violation has occurred. In that opinion, the Court laments *twice* that "despite the court's willingness to certify an appeal from the liability verdict, defense counsel opted to wait until final damage judgments were entered before appealing." *Blyden*, 186 F.3d at 260–61.

In support of the contrary approach, the Court noted that in *Martin v. Behr Dayton Thermal Prod. LLC*, 896 F.3d 405 (6th Cir. 2018), the Sixth Circuit declined to reverse a class certification order based on Seventh Amendment concerns because "'the district court ha[d] not settled on a specific procedure,'" such as using a "Special Master." Order at 11 (quoting *Martin*, 896 F.3d at 417). But in that case, the district court was far behind this one: it had just granted class certification and had not reached trial. *Martin*, 896 F.3d at 410. Here, the Court has conducted an entire Phase I jury trial as well as explained how the Phase II trials will proceed. And while the Court notes there are remaining "nuts-and-bolts, logistical issues" and believes that "[t]houghtful

Phase II jury instructions and evidentiary rulings will likely prevent a Seventh Amendment violation" (*id.* at 11–12), it is Jacobs' position that a Seventh Amendment violation is inevitable, no matter how careful the Court is with Phase II's logistical issues, jury instructions, and evidentiary rulings. As explained next, the Court's solution to the problem of the Phase I barebones verdict form—to reconcile the findings of the two juries based on a substantial evidence standard—is based on inapplicable law and will result in the violation of Jacobs' Seventh Amendment and Due Process rights, and in the process violate the Rules Enabling Act. The issue is ripe now, and it will not change with further proceedings.

### 2. Question 2: Whether a District Court Can Avoid a Seventh Amendment Violation by "Reconciling" the Juries' Findings in Phase I and Phase II.

There are also substantial grounds for a difference of opinion regarding whether a violation of the Seventh Amendment can be avoided by the Court "reconcil[ing]" the findings of different juries to "effectuate liability." Order at 17, 20.

The Court's order states that "[t]he Phase II jury will be instructed that [the] verdict of the Phase I jury—that Jacobs breached duties owed to plaintiffs, resulting in exposure that was capable of [causing] the alleged diseases—is binding." *Id.* at 12. In other words, the Court recognizes that the Phase II juries cannot be told which of Plaintiffs' six theories of liability the first jury believed had been proven by a preponderance of the evidence, as it is impossible to know that from the verdict form. The Court also (correctly) recognizes "the possibility remains that a second or subsequent Phase II jury could potentially *find specific causation and damages for* exposures attributable to conduct for which the Phase I jury did not find negligence." *Id.* at 16. This problem is particularly pronounced for the Plaintiffs who could not have possibly been injured based on some of Plaintiffs' theories, such as Plaintiffs Wilkinson and Brewer who could never recover

based on the theory that Jacobs "failed to comply with the provisions" regarding the "voluntary use of dust masks." Order at 18–19. But the Court concludes this "does not necessarily mean that Jacobs *will be held liable for* said non-negligent conduct." *Id.* According to the Court, it believes it can—and the Seventh Amendment instructs it to—"reconcile[]" that "inconsistency." *Id.* at 17. To do so, the Court indicates it will apply "Tennessee's general verdict statute" and ask whether "a reasonable Phase I jury *could have found* an accordant duty, breach, and general causation" to "effectuate liability." *Id.* at 19–20; *see also id.* at 18.

The Sixth Circuit should have the opportunity to weigh in now on these important, constitutional issues. *First*, the Court's interpretation of the law appears to be unprecedented. The Court acknowledges it "has not found" any cases adopting its view; Plaintiffs did not submit any in opposition to Jacobs' new trial motion; and Jacobs has not found any, either. This alone strongly cuts in favor of seeking the guidance of the Sixth Circuit. *Couch v. Telescope Inc.*, 611 F.3d 629, 633 (9th Cir. 2010) (noting that "[c]ourts traditionally will find" grounds for interlocutory review where "novel and difficult questions of first impression are presented" (quoting 3 Fed. Proc., Lawyers Ed. § 3:212 (2010))); *see also In re Trump*, 874 F.3d at 952. The Sixth Circuit may decide that the Court has adopted an "innovative procedure for streamlining the adjudication of [a] mass tort." *In re Rhone-Poulenc Rorer*, 51 F.3d at 1297. Or it may find, as Jacobs contends, that this plan "far exceeds the permissible bounds of discretion in the management of federal litigation" and that the Phase I verdict must be vacated. *Id.* It is in everyone's best interest to know the answer before the Court and the parties embark on the expensive and time-consuming process of multiple Phase II trials.

*Second*, Jacobs submits that the reason there are no cases in bifurcated proceedings citing the doctrines the Court relies on—the inconsistent verdict doctrine and Tennessee's general verdict

statute—is because they do not apply to a case like this one and employing them would lead to a violation of the Seventh Amendment. As the authority cited by the Court demonstrates, the inconsistent verdict doctrine is premised on the idea that the Court should try to make the "jury's answers to special interrogatories consistent" when possible. *Atlantic & Gulf Stevedores, Inc. v. Ellerman Lines, Ltd.*, 369 U.S. 355, 364 (1962). "If no such resolution is possible, the Seventh Amendment requires that the court order a new trial." *Harris v. Niagara Mohawk Pwr. Corp.*, 252 F.3d 592, 598 (2d Cir. 2001).

Here, "no such resolution is possible" because it is *impossible* to know what the jury in Phase I found. The Court thus cannot make that verdict "consistent" with what a Phase II jury finds. If the Court knew, for example, that the Phase I jury agreed with Plaintiffs' negligence theories #1 and #2, and a Phase II jury agreed with theories #2 and #3, perhaps, a court could "reconcile" those and find liability on theory #2. *But the Court does not have the information to do that here.* There were no "special interrogatories" on what the Phase I jury found about Plaintiffs' six theories of liability that could be used to "reconcile" that verdict with what the Phase II juries may find. As the Fifth and Tenth Circuits have explained, a court cannot create "consisten[cy]" through "nothing more than pure speculation." *Carr v. Wal-Mart Stores, Inc.*, 312 F.3d 667, 675 (5th Cir. 2002); *see also Loughridge v. Chiles Power Supply Co., Inc.*, 431 F. 3d 1268, 1287 (10th Cir. 2005) (citing *Carr*, 312 F.3d at 675). To do so is "tantamount to a bench trial in violation of [the party's] right under the Seventh Amendment to a trial by jury." *Carr*, 312 F.3d at 675.

Tennessee's general verdict statute likewise has no application to this case. Tennessee requires the *same jury* to hear all "material controverted issues." *Ennix v. Clay*, 703 S.W.2d 137, 139 (Tenn. 1986); 2 Tenn. Cir. Ct. Prac. § 26:3 (2018) ("[A] litigant has a constitutional right to

have all issues of material fact in dispute submitted to the *same jury* but not at the same time." (emphasis added)). Thus, Tennessee's general verdict statute cannot possibly govern a proceeding like this one—with *different juries* in Phase I and Phase II—that would (or should) never occur in Tennessee.

Moreover, although the Phase I verdict form was barebones, it was not a "general verdict" as the statute understands that term. "A general verdict states who won a case (and sometimes how much was won) but does not otherwise express the jury's specific fact findings." 2 Tenn. Cir. Ct. Prac. § 26:3; *Overstreet v. Shoney's, Inc.*, 4 S.W.3d 694, 714 (Tenn. Ct. App. 1999) (A general verdict "is a unitary finding by the jury on all the issues between the parties including damages"). And it is because a general verdict indicates that one party won that the law indulges the assumption that the jury found in its favor on all material issues. Tenn. Code Ann. § 20-9-503 ("A general verdict, although it may not in terms answer every issue joined, is nevertheless held to embrace every issue."); *Reliance Ins. Co. v. Liberty Mut. Ins. Co.*, 497 S.W.2d 885, 887 (Tenn. 1973) (same). But here, the Phase I jury has not determined overall liability, and the Phase II juries will only be asked whether Plaintiffs have proved "(1) specific causation with respect to individual plaintiffs; (2) each plaintiff's alleged injuries; and (3) the extent to which individual plaintiffs are entitled to damages." Order at 11–12. Thus there will never be a jury verdict indicating "who won" the case from which the Court could extrapolate more specific findings.

*Third*, the Court's proposed method of "reconcil[ing]" also violates the Seventh Amendment, Due Process, and the Rules Enabling Act. The Court proposes that if a Phase II jury finds specific causation and damages based on any of Plaintiffs' six theories, it will then ask whether "a reasonable Phase I jury *could have found* an accordant duty, breach, and general causation." Order at 19–20, *see also id.* at 18. As the Court notes, the "familiar" "could have"

inquiry is whether there is "a legally sufficient evidentiary basis" for a finding. *Id.* at 18.

The Court's proposed solution violates the Seventh Amendment because *the Court*, not the jury, would determine whether Plaintiffs have proved the elements of duty, breach, and general causation with respect to Plaintiffs' six theories of liability. According to the Court, *it* will decide whether "a reasonable Phase I jury *could have found* an accordant duty, breach, and general causation." *Id.* at 19–20, *see also id.* at 18. But Jacobs has a constitutional right under the Seventh Amendment to have the juries, not the Court, determine each and every element before liability can be established. U.S. Const. amend. VII.

Moreover, the Court's proposed solution not only makes it the fact finder in violation of the Seventh Amendment—it also lowers the burden of proof. Instead of asking whether Plaintiffs have proved by the preponderance of the evidence the elements of duty, breach, and general causation with respect to Plaintiffs' six theories of liability, the Court has proposed to examine only whether there is a "sufficient evidentiary basis" for each of those theories or whether enough "material evidence" has been presented in support of each of the theories. Order at 18. Yet, it is undisputed that Jacobs can be held liable only if Plaintiffs have proved each and every element by a *preponderance of the evidence*. In an attempt to rectify the problem of a barebones verdict form in a bifurcated trial, the Court cannot alter the burden of proof, in violation of Due Process and the Rules Enabling Act. No rule of procedure can "abridge, enlarge or modify any substantive right," 28 U. S. C. § 2072(b), nor can it infringe on party's right to its "defenses." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2561 (2011).[1]

---

[1] The Court also noted "[a]n additional consideration weigh[ing] in favor of denying Jacobs' motion"—that Plaintiffs admit they cannot prove "which specific breach . . . caused" an individual Plaintiff's harm. Order at 20. This ruling only further counsels in favor of interlocutory review. As the Court acknowledges, Plaintiffs "must show" in Phase II "that

*   *   *

Simply put, there are substantial grounds for a difference of opinion on whether the Court is properly innovating or violating the Constitution and the Rules Enabling Act. Immediate review by the Sixth Circuit is appropriate.

### C. An Immediate Appeal Will Materially Advance the Ultimate Termination of This Litigation.

Finally, an interlocutory ruling by the Sixth Circuit will materially advance the ultimate termination of this litigation because it may stave off ultimately unnecessary, "protracted[,] and expensive litigation." *In re Baker & Getty Fin. Servs., Inc.*, 954 F.2d 1169, 1172 (6th Cir. 1992) (quoting *Kraus v. Bd. of Cty. Rd. Comm'rs*, 364 F.2d 919, 922 (6th Cir. 1966)); *see also Van Meter v. Barr*, 976 F.2d 1, 1 (D.C. Cir. 1992) (certifying to "avoid having a wasted trial on the merits"). At the very least, review is proper under the statute's "*may* materially advance" requirement, 28 U.S.C. § 1292(b) (emphasis added), because resolution of these issues will "significantly [a]ffect trial preparation and settlement negotiations." *Russell v. Atlantic & Gulf Stevedores*, 1980 A.M.C. 2922, 2927 (5th Cir. 1980) (quoting Judge Sear's section 1292(b) certification order).

The choice here is stark. If the Court proceeds on the assumption that it will be able to "reconcile[]" the Phase I findings with the Phase II findings, there will be multiple Phase II trials, each requiring a separate jury, as both parties agree. If Jacobs is correct, this would mean that not only will all of these expensive and time-consuming trials be for naught, but Jacobs will have had its constitutional right to a fair jury trial repeatedly violated, and possibly suffer significant

---

Jacobs' *conduct* actually caused their injuries." *Id.* at 32 (emphasis added). It is not enough to show that fly ash exposure in general caused the injuries: it must have been "*Jacobs'* conduct." *See id.* (emphasis added). If that is no longer possible due to bifurcation and the verdict form Plaintiffs demanded, the answer is judgment in Jacobs' favor or order a new trial, not deprive Jacobs of its Seventh Amendment right to have a jury determine whether Plaintiffs have proved each element by a preponderance of the evidence.

repercussions that cannot be undone on appeal. Again, a violation of the party's "constitutional rights" typically constitute "irreparable harm," that should be halted *before* it occurs. *Cf. Overstreet*, 305 F.3d at 578. Moreover, forging ahead will also likely discourage settlement, given that these issues go to the very essence of whether the trials will be considered fair and constitutional.

In contrast, if this Court certifies the order to the Sixth Circuit and the Sixth Circuit agrees to review the Court's order, then the parties will have eliminated the risk of extensive judicial and party resources being expended on numerous—perhaps dozens—of Phase II trials that would be fatally flawed from the outset. If Jacobs prevails on appeal, the parties could then proceed with individual bellwether trials on *all* elements as Jacobs proposed in its brief relating to the procedures of Phase II (Doc. 454 at 2–3, 11–12), which Jacobs does not believe will require significantly more time or expense than the Phase II trials currently envisioned by the parties and the Court.

Nor is there any reason to believe the path to a judgment and appeal to decide these important issues will proceed quickly. By no means will the Phase II trials be straightforward: Plaintiffs will need to present individualized expert testimony regarding the cause of their claimed medical condition(s), as well as complex expert testimony on the quantum of damages. And the parties have not even started discovery on these complex issues.

It makes little sense to roll the dice and hope that the Court's plan comports with the Constitution given the acute risk that Jacobs' Seventh Amendment rights will be violated. The Sixth Circuit should determine whether the Court's plan violates the Constitution before the parties spend months, not to mention millions of dollars, litigating the issues that remain for Phase II.

Respectfully submitted,

**NEAL & HARWELL, PLC**

By: /s/ James F. Sanders
James F. Sanders (No. 005267)
jsanders@nealharwell.com
J. Isaac Sanders (No. 029372)
isanders@nealharwell.com
Marie T. Scott (No. 032771)
mscott@nealharwell.com
1201 Demonbreun Street, Suite 1000
Nashville, Tennessee 37203
Telephone: (615) 244-1713
Facsimile: (615) 726-0573

**GIBSON, DUNN & CRUTCHER LLP**

Theodore J. Boutrous, Jr. (*pro hac vice*)
tboutrous@gibsondunn.com
Theane Evangelis (*pro hac vice*)
tevangelis@gibsondunn.com
Jeremy S. Smith (*pro hac vice*)
jssmith@gibsondunn.com
333 South Grand Avenue
Los Angeles, California 90071-3197
Telephone: (213) 229-7000
Facsimile: (213) 229-7520

*Attorneys for Defendant*
*Jacobs Engineering Group, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on this the 11th day of March, 2019, I have electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system. Notice of this filing will be sent to all parties and counsel of record by operation of the Court's CM/ECF system. All other parties will be served by regular U.S. Mail. Parties may access this filing through the Court's electronic filing system.

/s/ James F. Sanders