UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| GREG ADKISSON, et al., Plaintiffs, v. JACOBS ENGINEERING GROUP, INC., Defendant. | No.: | 3:13-CV-505-TAV-HBG *Lead Case Consolidated with* |
| KEVIN THOMPSON, et al., Plaintiffs, v. JACOBS ENGINEERING GROUP, INC., Defendant. | No.: | 3:13-CV-666-TAV-HBG as c*onsolidated with* |
| JOE CUNNINGHAM, et al., Plaintiffs, v. JACOBS ENGINEERING GROUP, INC., Defendant. | No.: | 3:14-CV-20-TAV-HBG |
| BILL ROSE, Plaintiff, v. JACOBS ENGINEERING GROUP, INC., Defendant. | No.: | 3:15-CV-17-TAV-HBG |
| CRAIG WILKINSON, et al., Plaintiffs, v. JACOBS ENGINEERING GROUP, INC., Defendant. | No.: | 3:15-CV-274-TAV-HBG |
| ANGIE SHELTON, as wife and next of Kin on behalf of Mike Shelton, et al., Plaintiffs, v. JACOBS ENGINEERING GROUP, INC., et al., Defendants. | No.: | 3:15-CV-420-TAV-HBG |

| | |
|---|---|
| JOHNNY CHURCH,<br>    Plaintiff,<br>v.<br>JACOBS ENGINEERING GROUP, INC., et al.,<br>    Defendants. | No.: 3:15-CV-460-TAV-HBG |
| DONALD R. VANGUILDER, JR.,<br>    Plaintiff,<br>v.<br>JACOBS ENGINEERING GROUP, INC.,<br>    Defendant. | No.: 3:15-CV-462-TAV-HBG |

**PLAINTIFFS' RECOMMENDATIONS TO THE COURT FOR PHASE II TRIAL PLAN**

## I. INTRODUCTION

Pursuant to the Court's Order [Doc. 489], Plaintiffs in the *Adkisson* consolidated cases recommend to the Court the following Phase II Trial Plan. This recommendation expands upon Plaintiffs' Phase II Trial Proposal, filed January 4, 2019 [Doc. 453] and recommends grouping of Phase II trials by disease type to reduce the number of trials, with staggered Phase II discovery focused on upcoming trials. Plaintiffs propose that the first trial, involving 7 Plaintiffs identified herein, be scheduled as soon as practicable, but no later than one year from now.

## II. ISSUES FOR PHASE II TRIALS

A. <u>Specific Causation, Injury, and Damages</u>

As the Court's Bifurcation Order says:

> Phase II will involve issues and evidence relating to:
> (1) specific causation with respect to individual plaintiffs;
> (2) each plaintiff's alleged injuries; and
> (3) the extent to which individual plaintiffs are entitled to damages.

[Doc. 136 at 6].

For specific causation, Plaintiffs "have to show that [their] exposures actually did cause their individual diseases (by, for example, eliminating alternative causes)" [Doc. 302 at 15]. Under

Tennessee law, specific causation can be established if Plaintiffs' exposure was a "substantial factor" in their individual diseases. *See e.g. Hale v. Ostrow*, 166 S.W.3d 713, 718 (Tenn. 2005) ("It is not necessary that the defendants' act be the sole cause of the plaintiff's injury, only that it be *a* cause . . . [For proximate causation] [t]he tortfeasor's conduct must have been a "substantial factor" in bringing about the harm being complained of."). Under Tennessee law, Plaintiffs can recover for aggravation of a preexisting condition. T.P.I. Civil 14.08; *Haws v. Bullock*, 592 S.W.2d 588, 594 (Tenn. Ct. App. 1979). These are all issues of exposure and medical proof. Assuming Plaintiffs prove specific causation, they may recover the following types of damages, for which evidence will be presented: out-of-pocket medical expenses; future medical expenses; lost wages, lost earning potential, pain and suffering, permanent impairment and/or disfigurement, and loss of enjoyment of life. *See e.g. Meals ex rel. Meals v. Ford Motor Co.*, 417 S.W.3d 414, 419 (Tenn. 2013). There are also claims for spouses for loss of consortium.

None of these issues will require the jury to reexamine any of the questions decided in the Phase I trial in violation of reexamination clause of the Seventh Amendment to the U.S. Constitution. The parties have briefed this question extensively, and Plaintiffs will not waste the Court's time by repeating the arguments here. The Court denied Jacobs' Motion for a New Trial, stating, "the Court is confident that Phases I and II are sufficiently distinct that no reexamination will occur in the future…" [Doc. 462 at 11]. The Court denied Jacobs' motion for an interlocutory appeal of the denial of the motion [Doc. 471], and the U.S. Court of Appeals for the Sixth Circuit denied Jacobs' petition for writ of mandamus on this question on August 13, 2019 [Doc. 480].

B.  <u>Punitive Damages</u>

In addition to specific causation, injury and damages, the entitlement of each plaintiff to punitive damages and the amount of punitive damages to be awarded should be heard in the Phase

3

II trials. It is clear from the evidence presented in Phase I that Plaintiffs are entitled to have a jury decide the punitive damages issue. There was ample evidence presented in the Phase I trial of malicious, intentional, fraudulent and reckless conduct on the part of Jacobs, which included deliberately manipulating and tampering with air monitoring results or processes, threatening workers when they asked for dust masks or respirators, and communicating to workers that fly ash was safe to consume. The Court gave the jury a permissive adverse inference instruction regarding the deliberate tampering with air samples or results, allowing the jury to infer that the test results would have been favorable to the Plaintiffs and adverse to the Defendant. The jury found Jacobs was negligent based on this conduct, but the conduct goes far beyond mere negligence. *See e.g.* *Flax v. DaimlerChrysler Corp.*, 272 S.W.3d 521, 535 (Tenn. 2008) (punitive damages award of $13,367,345 upheld where defendant consciously disregarded a known, substantial, and unjustifiable risk to the plaintiffs).

Under the punitive damages statute, Tenn. Code Ann. § 29-39-104(1), the jury would first be asked whether Plaintiffs have proven by clear and convincing evidence that Jacobs acted maliciously, intentionally, fraudulently or recklessly. While some of the same <u>evidence</u> about Defendant's conduct presented in Phase I would be presented for punitive damages in Phase II, Phase II would not require the reexamination of the <u>issues</u> presented to the jury in Phase I. As quoted by the Court in denying Jacobs' motion for a new trial [Doc. 462 at 12]:

> The existence of common factual issues is to be distinguished from the existence of overlapping evidence. For purposes of the Seventh Amendment, the question is whether factual issues overlap, thus requiring one trier-of-fact to decide a disputed issue that must be decided by a subsequent jury, not whether the two fact-finders will merely have to consider similar evidence.

*Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 423 n.21 (5th Cir. 1998).

4

Case 3:16-cv-00635-TAV-HBG   Document 261   Filed 03/30/20   Page 4 of 12   PageID #: 12072

The jury in Phase II would not be asked whether Defendant breached duties owed to Plaintiffs, as it was in Phase I, and there would be no possibility of inconsistent verdicts on the same issues. It is certainly possible that a Phase II jury could find that conduct for which Jacobs was held liable for negligence in Phase I does not rise to the level required for punitive damages in Phase II, but this is a possibility in every trial with a claim for punitive damages.

In any event, Jacobs has waived any Seventh Amendment objections to having punitive damages heard in Phase II. During the September 20, 2018, Status Conference when Plaintiffs requested the issue of eligibility for punitive damages to be tried in Phase I and specifically discussed the potential Seventh Amendment issues of trying them in Phase II. Jacob's counsel waived any objection. [Excerpts from Status Conference Proceedings Before the Honorable Thomas A. Varlan, September 20, 2018, at 6-12, attached as Exhibit 1].

Under Tenn. Code Ann. § 23-39-104(a)(2) and (3), if the jury finds that the Defendant's conduct was malicious, intentional, fraudulent or reckless, "then the court shall promptly commence an evidentiary hearing in which the jury shall determine the amount of punitive damages, if any." Tenn. Code Ann. § 29-39-104(a)(4) sets out the evidence to be considered by the jury in determining the amount of punitive damages.[1]

Finally, punitive damages can be sought for each Plaintiff in Phase II, because there is no prohibition under Tennessee law on punitive damages awards for multiple plaintiffs in a mass tort case. *See Cathey v. Johns-Manville Sales Corp.*, 776 F.2d 1565, 1571 (6th Cir. 1985) (rejecting a due process violation argument by a defendant potentially subject to multiple punitive damages awards). However, under Tenn. Code Ann. § 29-39-104(a)(4), one factor the jury can consider in

---

[1] There should not be any facts to be heard regarding the punitive damages cap in § 29-39-104(5) and (7), because the Sixth Circuit Court of Appeals recently found the cap violates the individual right to a trial by jury set forth in the Tennessee Constitution. *Lindenberg v. Jackson National Life Insurance Company*, 912 F.3d 348, 366 (6th Cir. 2018).

5

determining the amount of punitive damages in any particular case is "whether, and the extent to which, defendant has been subjected to previous punitive damage awards based upon the same wrongful act."

C.     Summary of Issues for Jury

In summary, the following issues would be presented to each jury in the Phase II trials:

(1) specific causation with respect to each individual plaintiff claiming one or more of the diseases found by the Phase I jury to be caused by coal ash exposure;
(2) the extent of each plaintiff's alleged injuries;
(3) the extent to which individual plaintiffs are entitled to economic and non-economic damages;
(4) whether Plaintiffs have proved by clear and convincing evidence that Jacobs acted maliciously, intentionally, fraudulently or recklessly; and
(5) if the jury finds Plaintiffs are entitled to punitive damages, an evidentiary hearing would be conducted, after which the jury would decide the amount of punitive damages to award to each Plaintiff, if any, based on the factors in Tenn. Code Ann. § 29-39-104(a)(4).

**III.     PROPOSED PROCEDURE FOR PHASE II**

Plaintiffs are certain the Court and the Defendant would agree that a trial of all 52 cases at once would be unwieldy and confusing to the jury.[2] On the other hand, it would create undue delay for the Plaintiffs, cause excessive expense for the Parties, and unduly consume the Court's resources to conduct 52 separate trials. Plaintiffs' proposal seeks to balance these two opposite approaches by consolidating individual cases for Phase II Trial based upon the primary disease type for which recovery is sought.

Pursuant to Fed. R. Civ. P. 42, the Court has broad discretion in how to consolidate or separate cases for trial. Plaintiffs considered proposing a bellwether approach, but the numbers of Plaintiffs are not so large that the Court would likely find this approach warranted. *See Auchard v.*

---

[2] There are 52 ash spill cleanup worker Plaintiffs suing for personal injuries, including 3 who are deceased, and 19 spouses suing for loss of consortium (one spouse, Ms. Angie Shelton, is also suing as next of kin of deceased, Mr. Mike Shelton). Given that the loss of consortium claims are dependent upon the worker personal injury claims and would be tried together, there are 52 cases for trial.

6

*Tennessee Valley Authority*, No. 3:09–CV–54, 2011 WL 444845, *2-3 (E.D. Tenn. Feb. 1, 2011). However, Plaintiffs believe it would be beneficial for the Parties and the Court and would "expedite and economize" pursuant to Fed. R. Civ. P. 42(b), to split the trials into manageable groups and to phase further discovery so that it would focus on each group as its trial date approaches rather than being scattershot for all the Plaintiffs at the same time. Because Plaintiffs are not requesting the use of bellwether or representative Plaintiffs, there is no issue of the representativeness of the Plaintiffs selected for the first trials or future trials. S*ee e.g. In re Chevron U.S.A., Inc.*, 109 F.3d 1016, 1019–20 (5th Cir. 1997) (ruling that cases selected for a bellwether trial need to be representative of all cases). Plaintiffs filed these cases and have the burden of proof, so they should be able to select the Plaintiffs for each trial, just as they would control the presentation of their witnesses and evidence if all the cases were being tried at once.

Based on the Phase I jury verdict on general causation, Plaintiffs propose that Plaintiffs be grouped for trial by disease type found to be caused by exposure to fly ash. This would allow for the use of the same expert witnesses and similar medical proof to be presented for specific causation for each Trial Group to provide efficiencies for the Parties and reduce confusion by the juries. Some of the Plaintiffs were treated by the same specialists for their illnesses, which would also make this approach more efficient for the testimony of treating physicians.

The jury in Phase I found that 10 types of diseases suffered by Plaintiffs can be caused by exposure to coal fly ash. Further grouping of some of these types of diseases is possible where the same medical experts will likely be involved with expert testimony about more than one disease type. For instance, Plaintiffs believe that lung cancer, asthma, chronic obstructive pulmonary disease, and the respiratory conditions in the tenth finding of the jury could be combined so that the Plaintiffs suffering primarily from these lung diseases can be joined in one trial with the same

7

expert witnesses and treating physicians testifying. Similarly, Plaintiffs believe hypertension and coronary artery disease can be combined, as could non-melanoma skin cancer and allergic contact dermatitis (skin allergy).

Here are the proposed disease groupings with a count of Plaintiffs who are seeking recovery for the disease(s) as their primary claim:

1) <u>Lung</u>: lung cancer, asthma, chronic obstructive pulmonary disease, respiratory conditions: there are 23 Plaintiffs in this group.

2) <u>Cardiovascular</u>: coronary artery disease, hypertension: there are 22 Plaintiffs in this group.

3) <u>Skin</u>: skin cancer, allergic contact dermatitis: there are 2 Plaintiffs in this group.

4) <u>Leukemia and Other Hematologic Malignancies</u>: there are 4 Plaintiffs in this group.

5) <u>Peripheral Neuropathy</u>: there is 1 Plaintiff in this group.

Obviously, the lung and cardiovascular groups will have to be divided into more than one trial each. With these groups divided into subgroups of 7 or 8, it is possible for all the cases to be tried with 8 trials: 3 trials each for the heart and lung groups, 1 for the leukemia and other hematologic malignancies group, and 1 for a combination of the skin and peripheral neuropathy groups. The jury in each case should be able to keep track of the evidence for 7 or 8 Plaintiffs and avoid confusion. A carefully crafted verdict form should help in distinguishing among the Plaintiffs in answering the verdict questions. With the Court's permission, Plaintiffs can prepare notebooks with photographs of each Plaintiff and basic information about them to assist the jury in keeping track of the evidence. The Manual for Complex Litigation suggests that consolidation of fewer than ten (10) cases for trial can be effective. Manual for Complex Litigation, Fourth, § 2293 at 466.

8

Case 3:16-cv-00635-TAV-HBG   Document 261   Filed 03/30/20   Page 8 of 12   PageID #: 12076

A.    Trial 1 – Lung Group

Plaintiffs propose that the first trial focus on lung disease cases with the 7 Plaintiffs selected below presenting their cases to a jury. The lung group should be tried first, because it is the most numerous and has several Plaintiffs with serious illnesses which may lead to death or total disability in the near future. Following are the Plaintiffs selected for the first trial:

Lung Group

> William Harvey Bass
> Jeffrey Brewer
> Tim Gibson
> Stanley Hill
> Mike Shelton
> Kenneth Shepherd
> Kevin Thompson

B.    Trial 2 – Cardiovascular Group

The second trial should focus on cardiovascular disease cases with the 7 Plaintiffs selected below. The heart group should be second, because it is the second largest and also includes several individuals who have serious illnesses warranting as early a trial as practicable. Following are the Plaintiffs selected for the second trial:

Heart Group

> Leonard Bledsoe
> Ansol Clark
> Dan Cody
> John Cox
> Enoch "Roy" Edmonds
> Jimmy Kilby
> Mike McCarthy

C.    Proposed Schedule

Plaintiffs propose that the Court schedule the first trial as soon as practicable, but no less than one year from now. Plaintiffs will cooperate with Defendant in drafting a proposed scheduling

9

Case 3:16-cv-00635-TAV-HBG   Document 261   Filed 03/30/20   Page 9 of 12   PageID #: 12077

order that will provide for expert disclosures, *Daubert* motions, and dispositive motions for the first trial based on the Court's standard scheduling order.

Plaintiffs propose that discovery should commence for both the first and second trial groups but that the Court set the second trial date in a future status conference as discovery proceeds and pre-trial motions are decided for both groups of Plaintiffs. Discovery should be stayed for the rest of the Plaintiffs not in the first two trial groups to avoid the impact of scattershot discovery of all Plaintiffs on the ability of the Parties to prepare for the first two trials. Additional discovery may be necessary on Plaintiffs' punitive damages claims, but this will not involve more than one or two Rule 30(b)(6) depositions which will apply to all the cases.

There would be expert proof of exposure and specific causation in each trial, with common medical expert witnesses based on the disease (*e.g.*, same expert cardiologist for all the cardiovascular cases), providing efficiencies for the Parties and the Court. Expert reports would be disclosed in accordance with the pretrial order, and each side would have the opportunity to depose the other's expert witnesses.

Each Plaintiff would testify about his or her exposure and medical conditions, and there would likely be additional fact witnesses concerning exposure. Treating physician testimony would be presented either live or by deposition video, and in some cases, a life care planner and economist may need to testify as an expert witness about damages.

Finally, Plaintiffs and other fact witnesses would testify about Jacobs' conduct giving rise to punitive damages. If the jury finds Plaintiffs are entitled to punitive damages, then, in a separate evidentiary hearing, one or more witnesses will testify about some of the factors in Tenn. Code Ann. § 29-39-104(a)(4) concerning the amount of punitive damages, including Jacobs' financial

condition and net worth. This testimony would be common to all the cases and may be by video deposition excerpts.

Once the second trial is scheduled, Plaintiffs will select trial groups for the third and fourth trials, and a scheduling order can be developed for those Plaintiffs, including discovery and pre-trial motions. Discovery would remain stayed for the rest of the Plaintiffs until they are selected for a trial. This process can continue until all the cases are tried or otherwise resolved.

## IV. CONCLUSION

Plaintiffs submit that this relatively simple proposal should be adopted by the Court, because it furthers the goal of the federal courts "to secure the just, speedy, and inexpensive determination" of these actions, as well as the goal of Rule 42(b) "to expedite and economize." Fed. R. Civ. P. 1, 42(b). The first two trials will provide the Parties with more information about the strength and the value of the cases and will likely promote further settlement discussions. However, if no further settlement discussions ensue after these trials, the Court will have tried approximately one quarter of the cases to be tried (14 out of 52) and will put into motion a plan to complete the rest.

Respectfully submitted.

*/s/ Gary A. Davis*
Gary A. Davis, TN. Bar No. 009766
James S. Whitlock, NC Bar No. 34303
(*admission Pro Hac Vice*)
Davis & Whitlock, P.C.
21 Battery Park Ave., Suite 206
Asheville, NC 28801
T: (828) 622-0044
F: (828) 398-0435
gadavis@enviroattorney.com
jwhitlock@enviroattorney.com

James K. Scott, BPR #16893
Keith D. Stewart, BPR #17574
John Tyler Roper, BPR #21927
Market Street Law, PLLC
625 Market Street, 14th Floor
Knoxville, TN 37902
T: (865) 888-9995
F: (866) 245-0989
jimscott264@gmail.com
keithdstewart@gmail.com
tylerroperlaw@gmail.com

John B. Dupree
Bridgefront Law Group, PLLC
616 W. Hill Ave, 2nd Floor
Knoxville, TN 37902
T: (865) 223-5184
john.dupree@knoxtnlaw.com

Jeffrey E. Friedman, Ala. Bar No. asb-6868-n77j
(admission *Pro Hac Vice*)
Friedman, Dazzio, Zulanas & Bowling, PC
3800 Corporate Woods Drive
Birmingham, AL 35242
T: (205) 278-7000
F: (205) 278-7001
jfriedman@friedman-lawyers.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on March 30, 2020, a copy of the foregoing was filed electronically. Notice of filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access the filing through the Court's electronic filing system.

/s/Gary A. Davis
Attorney for Plaintiffs