UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE AT KNOXVILLE

| | | |
|---|---|---|
| GREG ADKISSON, et al., | ) | |
|     Plaintiffs, | ) | |
| v. | ) | No. 3:13-CV-00505-TAV-HBG |
| JACOBS ENGINEERING GROUP, INC., | ) | |
|     Defendant. | ) | *Lead case consolidated with* |
| KEVIN THOMPSON, et al., | ) | |
|     Plaintiffs, | ) | |
| v. | ) | No. 3:13-CV-00666-TAV-HBG |
| JACOBS ENGINEERING GROUP, INC., | ) | |
|     Defendant. | ) | |
| JOE CUNNINGHAM, et al., | ) | *as consolidated with* |
|     Plaintiffs, | ) | |
| v. | ) | No. 3:14-CV-00020-TAV-HBG |
| JACOBS ENGINEERING GROUP, INC., | ) | |
|     Defendant. | ) | |
| BILL ROSE, | ) | |
|     Plaintiff, | ) | |
| v. | ) | No. 3:15-CV-00017-TAV-HBG |
| JACOBS ENGINEERING GROUP, INC., | ) | |
|     Defendant. | ) | |
| CRAIG WILKINSON, et al., | ) | |
|     Plaintiffs, | ) | |
| v. | ) | No.: 3:15-CV-00274-TAV-HBG |
| JACOBS ENGINEERING GROUP, INC., | ) | |
|     Defendant. | ) | |
| ANGIE SHELTON, as wife and next of kin on behalf of Mike Shelton, et al., | ) | |
|     Plaintiffs, | ) | |
| v. | ) | No.: 3:15-CV-00420-TAV-HBG |
| JACOBS ENGINEERING GROUP, INC., | ) | |
|     Defendant. | ) | |
| JOHNNY CHURCH, | ) | |
|     Plaintiff, | ) | |
| v. | ) | No.: 3:15-CV-00460-TAV-HBG |
| JACOBS ENGINEERING GROUP, INC., | ) | |
|     Defendant. | ) | |

1

| | |
|---|---|
| DONALD R. VANGUILDER, JR., )<br>    Plaintiff, )<br>v. )<br>JACOBS ENGINEERING GROUP, INC., )<br>    Defendant. )<br>_____ ) | No. 3:15-CV-00462-TAV-HBG |
| JUDY IVENS, as sister and next of kin, )<br>on behalf of JEAN NANCE, deceased, )<br>    Plaintiff, )<br>v. )<br>JACOBS ENGINEERING GROUP, INC., )<br>    Defendant. )<br>_____ ) | No. 3:16-CV-00635-TAV-HBG |
| PAUL RANDY FARROW, )<br>    Plaintiff, )<br>v. )<br>JACOBS ENGINEERING GROUP, INC., )<br>    Defendant. )<br>_____ ) | No. 3:16-CV-00636-TAV-HBG |

**PLAINTIFFS' MOTION TO RECONSIDER**
**MEMORANDUM AND ORDER (ECF NO. 602)**

COME Plaintiffs, by and through counsel, and respectfully request that the Court reconsider the non-final, interlocutory Memorandum and Order issued on October 5, 2020 by Magistrate Judge Guyton (the "Order"), ECF No. 602.

Pursuant to Federal Rule of Civil Procedure 72(b), Plaintiffs' objections specifically identify aspects of the Order that are clearly erroneous and/or contrary to law and should be reviewed de novo by the District Judge and set aside or modified to comply with the Supreme Court's, the Sixth Circuit's, and this Court's prior precedents. *See* Fed. R. Civ. P. 72(a), (b)(3). Plaintiffs further rely upon and incorporate their prior briefing in support of their motion, ECF Nos. 592, 599.

## STANDARD OF REVIEW

Under 28 U.S.C. § 636(b)(1)(A) and Federal Rule of Civil Procedure 72(a), a district court must modify or set aside a Magistrate Judge's non-dispositive pretrial order if it is clearly erroneous or contrary to law. This standard requires the District Court to review findings of fact for clear error and to review matters of law de novo. A finding of fact is clearly erroneous when the reviewing court is left with the definite and firm conviction that a mistake has been committed. A district court may not reverse the Magistrate Judge's factual findings merely because it would have decided the matter differently, rather the test is whether there is evidence in the record to support the lower court's finding, and whether its construction of that evidence is a reasonable one. Under the contrary to law standard, the Court may overturn any conclusions of law which contradict or ignore applicable precepts of law, as found in the Constitution, statutes, or case precedent.

*Clabo v. Johnson & Johnson Health Care Sys., Inc.*, No. 3:19-CV-154, 2020 U.S. Dist. LEXIS 1475 (E.D. Tenn. Jan. 6, 2020) (internal punctuation and citations omitted).

## OBJECTION NO. 1

**The Magistrate erred in finding that inquiries made during Jacobs' depositions of third-party fact witnesses were relevant and proportional to the needs of the case.**

### A. Defining the Irrelevant Topics

The fundamental basis for the Magistrate's decision was a finding that the at-issue deposition topics were relevant and proportional to the needs of the case. This finding, however, was based on an incomplete and erroneous analysis of Plaintiffs' argument. The Magistrate stated this about the deposition topics that it believed to be at issue: "During the motion hearing, Plaintiffs identified the line of questioning regarding when these third-party fact witnesses met with an attorney, as well as questioning about the deponent's medical history beyond the specific diagnoses, as those that were irrelevant and disproportional to the needs of the present cases." Order at 7-8. These topics, however, were not the only objectionable topics Plaintiffs identified.

THE COURT: What are the egregious questions?

> MR. RINGGER: "When did you first meet with an attorney?" "When did you decide to file a lawsuit?" "When did you and your doctor decide or discuss that this was potentially due to coal ash exposure?"

Mot. Hr'g Tr., Oct. 1, 2020, at 5:22-25, ECF No. 638. Plaintiffs' counsel explained further:

> MR. RINGGER: "When did you first meet with a lawyer?" And from that, of course, you know, there would be lodged objections, and then the colloquy would naturally -- or it has tended to lead into questioning about, "When did you first make a connection between your coal ash exposure and the symptoms that you've listed?" Then they would go through each various symptom. Then they will ask them, "Well, when did you make a connection between coal ash exposure and this particular symptom?"

*Id.* at 7:2-12.

> MR. SILVEY:[1] Your Honor, there are a number of areas that -- having sat through a number of these things -- that we feel like exceed the scope of what is necessary. For example, assuming that the expert is concerned about the incidence of a condition and when it was diagnosed, questions about medical history exceed the scope of what the expert would rely on. We would say that that would be beyond the scope of what's necessary. Questions about a witness's work background, again, are beyond the scope, and, again, for these third-party witnesses would be beyond the scope of what was necessary.
>
> Even things as simple -- if the Court wants to discuss it in terms of being burdensome, they will -- and, again, it's perfectly appropriate for them to ask -- for each of the Adkisson plaintiffs, what they do is go down a list of all the plaintiffs and say, "Do you know this person; yes or no?" And they will say yes or no, and then they will come back and ask them questions about it. For a number of these witnesses, they will say, "Yes, I know the name only." "Do you know Greg Adkisson?" "I know that name." They will then come back and say, "You said you know Greg Adkisson's name. Do you know anything else about them?" "No. And then they will ask ten or 12 more questions. "So you don't know his work background?" "No." "So you don't know what his training was?" "No." "So you don't know what his initiation at the site was?" "No." "You don't know where he worked on the site?" So you've got another five minutes of questions -- two or three, five minutes of questions about stuff that obviously the answer is going to be no to. They have already said they don't know the person; they only know the name. There is no necessity to go into that. It simply extends the length of these depositions, and –
>
> THE COURT: Look, I don't have a problem -- okay.

---

[1] At the October 1, 2020 hearing both Mr. Ringger and Mr. Silvey were allowed to speak on behalf of Plaintiffs, to which Defendant Jacobs Engineering Group, Inc. ("Jacobs") did not object.

MR. SILVEY: -- it's unnecessary.

THE COURT: What's next? I don't have a problem with that. If someone says, "I know the name Adkisson," then I think they're entitled to say, "How do you know the name and what have you heard?"

MR. SILVEY: Exactly. But beyond that, if they say, "I don't know anything," our position would be you don't need to ask 75 other questions about what specific things don't you know. That simply extends the length of the deposition.

THE COURT: Okay. All right. What's next?

MR. SILVEY: Those are the major subject areas. Questions about, you know, "What did you observe," that's perfectly appropriate. Questions about, "Did you have a diagnosis of blank" is perfectly appropriate. But anything beyond that isn't. Again, the Court's impression is that these things are lasting two or three hours. That's not accurate. I've sat through a number of these things -- particularly if it's a husband and a wife -- that go five, five-and-a-half hours at least. And, again, the Court had assumed when we were last here that they were going to get shorter as they went, and they have not done that.[3] They're, in fact -- in many cases that I've been in -- getting longer. And so from a practical standpoint, a limitation would help all of us out to get these things done by the November 13th date. But those are some of the areas, Judge. You know, things that -- as Mr. Ringger has described, there are specific elements that the experts are going to rely on. Anything beyond that, we certainly assert as excessive, unnecessary, and burdensome. Does the Court have any other questions for me?

---

[3] "My experience with these type of things where you're deposing a big group of people about common topics is the depositions tend to start out longer and get shorter and shorter as you go through the people and you start getting the same answers over and over again. It tends to shorten them, shorten them, shorten them and that's been my experience." Mot. Hr'g Tr., Sept. 2, 2020, at 30:1-7, ECF No. 598-1. Counsel for Jacobs responded that the Court was "exactly right" that these depositions would shorten in length. *Id.* at 30:11.

The Magistrate's prediction has, in fact, not proved to be the case. Approximately sixty-four third-party fact witness depositions have been taken thus far. Recent depositions of workers have, on average, taken over three hours; and recent depositions of workers' spouses have, on average, taken over one hour. *E.g.*, Kenneth Wright Dep., September 25, 2020, at 6:9-10, 187:5 (Excerpts of the Deposition of Kenneth Wright are attached as **Exhibit A**); Martha Wright Dep. September 25, 2020, at 6:11, 71:3 (Excerpts of the Deposition of Martha Wright are attached as **Exhibit B**). Perhaps the most egregious example is the deposition of Kirk Wenzel that took place on October 5, 2020. The deposition began at 9:04 a.m. and was not concluded until 6:27 p.m., nearly nine and a half hours later. Kirk Wenzel Dep., Oct. 5, 2020, at 6:4, 398:21-22 (Excerpts of the Deposition of Kirk Wenzel are attached as **Exhibit C**). This, along with other evidence of the information Jacobs seeks, illustrate that Jacobs has not undertaken questioning into general matters, but instead focuses on information specific to each deponent in an effort to develop specific defenses against their stayed claims, which is irrelevant to the pending *Adkisson* cases.

5

> THE COURT: I just want to make sure there is no other area of questioning that you're objecting to. I don't want it to go unsaid.
>
> MR. SILVEY: Sure, sure. Let me think. I can't think of anything right offhand. Again, work history usually takes a considerable amount of time, and for these fact witnesses, work history isn't particularly relevant unless it's about what happened at the job site specifically. Otherwise, we would say that it's beyond the scope. Again, the medical condition history, family history about medical conditions; again, anything exceeding the scope that goes into work history, family history, medical history, that kind of stuff. That's what occurs to me right off the top of my head, Your Honor.

*Id*. at 14:21-18:12. While the Magistrate did note that there were additional subject areas mentioned in Plaintiffs' briefing, Order at 5, he nevertheless concluded that "Plaintiffs have not identified specific lines of questioning that are irrelevant or disproportional to the needs of the present case[.]" *Id*. at 8-9. However, Plaintiffs did cite to specific lines of objectionable questioning in their briefing and during the argument.

Thus, based on the motion papers and the arguments during the hearing Plaintiffs identified the lines of questioning that were irrelevant and not proportional to the needs of the case, which relate to:

- When the deponent first met with an attorney,
- When the deponent decided to file a lawsuit,
- When did the deponent first make a connection between his coal ash exposure and a potential medical condition,
- The deponent's entire medical history,
- The deponent's family medical history, and
- The deponent's entire work history prior to and subsequent to work at the Kingston Coal Ash Spill Site.

### B. Why the Topics Are Irrelevant to the *Adkisson* Cases

#### 1. Statute of Limitations Questions

Questions related to when a deponent first contacted an attorney, when a deponent first decided to file a lawsuit, and when a deponent first made a connection between coal ash exposure and a potential medical condition are in no way relevant to either the deponent's observations of

6

the site conditions that the *Adkisson* Plaintiffs were working under or the medical information that will be relied on by Plaintiffs' experts. As such, these questions exceed even the liberal bounds of discovery under Federal Rule of Civil Procedure 26. Plaintiffs object to the Magistrate's conclusion to the contrary, which amounts to error.

The Magistrate's erroneous conclusion appears to stem from its adoption of a misinterpretation of law asserted by Jacobs. Constructive knowledge relates to the discovery rule, which in turn relates to a statute of limitations defense. Jacobs suggests a third-party deponent's *subjective* concern regarding coal ash puts *others* on notice that coal ash is hazardous. However, as Tennessee courts have made clear, "for the theory of constructive knowledge, . . . the statute [of limitations] may begin to run at an earlier date—whenever the plaintiff becomes aware or reasonably should have become aware of facts sufficient to put a reasonable person on notice that an *injury has been sustained as a result of the defendant's negligent or wrongful conduct*." *John Kohl & Co P.C. v. Dearborn & Ewing*, 977 S.W.2d 528, 532 (Tenn. 1998) (emphasis added); *accord*, *Americare Sys. v. Pinckney*, 635 F. App'x 305, 309 (6th Cir. 2016) ("Under Tennessee law, a plaintiff must have actual or constructive knowledge that his injury was sustained as a result of wrongful or tortious conduct by the [defendant]. Not only must the plaintiff know that he has suffered an injury, but he must also know of the defendant's wrongful or tortious conduct that gave rise to the injury.") (citing *Kohl*, 977 S.W.2d at 532). And "[t]o eliminate confusion, this may be viewed as knowledge of two different things. First, knowledge of the injury. Second, knowledge of the negligent or wrongful conduct." *Americare Sys.*, 635 F. App'x at 309 n.2.

Merely being aware of, or being in a position in which a deponent should reasonably be aware of, a general condition—namely, that coal ash may be hazardous—is *not* sufficient for constructive knowledge. Indeed, a suspicion that coal ash exposure might have caused a third-

7

party deponent's medical condition is insufficient. Instead, to satisfy constructive knowledge, Jacobs would need to demonstrate that an *Adkisson* Plaintiff was put on notice that his medical conditions were sustained through exposure to coal ash, *and* that such exposure was *due to Jacobs' wrongful conduct*. *Americare Sys.*, 635 F. App'x at 309 n.2.

For example, even if a third-party deponent were to tell each *Adkisson* Plaintiff directly that "coal ash exposure is hazardous and can cause potential health problems," it would be insufficient to demonstrate constructive knowledge because any such statement fails to put the *Adkisson* Plaintiff on notice that the exposure resulted from Jacobs' negligence or wrongful conduct. The *Adkisson* Plaintiff would be entirely unaware of potential legal claims against Jacobs, even in the face of such general statements of coal ash's potential danger—especially those from a layman. More problematic are questions designed to elicit statements of general concerns about breathing the dust. Such subjective concerns or statements wholly fail to establish that any of the *Adkisson* Plaintiffs should have become aware that their sustained injuries were linked to Jacobs' wrongful conduct. *See Kohl*, 977 S.W.2d at 532; *Americare Sys.*, 635 F. App'x at 309 n.2. Such generalized concerns and statements would have been voiced—if ever even voiced to *Adkisson* Plaintiffs—*before* the *Adkisson* Plaintiffs ever actually developed medical injuries relating to their exposure, and they certainly would not have been aware that it related to Jacobs' malfeasance.

Jacobs' argument on constructive knowledge—and the Magistrate's acceptance of it—upends tort law. Take, for example, a common tort—that of a simple automotive accident. Jacobs' arguments advocate that a victim's statute of limitations begins to run from the first moment he learns that vehicles can cause accidents leading to injury. Imagine an accident occurring on January 1, 2019. Under Tennessee law, normally the statute of limitations would run on January 1, 2020. Tenn. Code Ann. § 28-3-104(a)(1)(A). However, Jacobs likely would assert—applying the same

logic of its arguments regarding constructive knowledge here—that the statute of limitations actually ran *before* the accident, because the victim already knew that vehicles can be dangerous and could lead to injury. Of course, this is not and cannot be the law. But this absurd argument was accepted. Plaintiffs object.

The information Jacobs seeks through these depositions relates exclusively to the development of statute of limitations defenses for currently stayed claims of the third-party deponents—not for defenses against *Adkisson* Plaintiffs' claims. Accordingly, the information sought is irrelevant to the *Adkisson* cases currently pending before this Court, and the Court should reverse the decision of the Magistrate as to these areas of inquiry.

### 2. Medical and Employment History Questions

Further, while the Magistrate made a passing reference to the undisputed point that Plaintiffs' experts would *only* be relying on a deponent's specific diagnosis and when it was first made, Order at 4, 8, the Court failed to explain how it reached its conclusion that "[t]he Court finds that questioning regarding *the third-party fact witnesses' medical conditions* is within the broad scope of discovery, as they were identified in Plaintiffs' Rule 26 disclosures as those likely to have discoverable information about *the Adkisson plaintiffs' medical conditions*," Order at 8 (emphasis added). But there is no logical connection between the two beyond the information Plaintiffs' experts will rely upon. The Magistrate's conclusion that this undisputed point still somehow throws open the door to any and all questions about a non-*Adkisson* deponent's entire work history and personal and family medical histories is erroneous, particularly since it appears to simply endorse Jacobs' position with no substantive analysis.[4]

---

[4] "Further, although Plaintiffs have claimed that solely the potential third-party fact witnesses' diagnoses will be utilized by their experts, Defendant maintains the right to question these individuals about such medical conditions. The Court . . . finds that Defendant shall be allowed to

9

Case 3:16-cv-00635-TAV-HBG   Document 389   Filed 10/19/20   Page 9 of 17   PageID #: 14647

While a third-party deponent's personal and family medical history would be relevant to the specific causation of his or her own claimed medical conditions, those claims are not currently before the Court. Until the stay is lifted in these deponents' cases and their claims are being actively litigated, they bear no conceivable relation to the deponent's observation of the working conditions of the *Adkisson* Plaintiffs or the limited use contemplated by the Plaintiffs' experts in the *Adkisson* cases. A third-party deponent's family history of medical conditions, for example, has no bearing whatsoever on an *Adkisson* Plaintiff's medical conditions, unless that deponent is a relative of an *Adkisson* Plaintiff. *E.g.*, Kimberly Dishman Dep., September 18, 2020, at 131:16-132:12 (Excerpts of the Deposition of Kimberly Dishman are attached as **Exhibit D**); Amanda McCann, September 10, 2020, at 66:23-67:8 (Excerpts of the Deposition of Amanda McCann are attached as **Exhibit E**). Beyond that, these inquiries have no relevance to anything other than the currently stayed claims of the third-party deponents, and they are disproportional to the needs of the *Adkisson* cases.

### C. Why the Topics Are Not Proportional to the Needs of the *Adkisson* Cases

"Six factors are relevant to proportionality: (1) 'the importance of the issues at stake in the action;' (2) 'the amount in controversy;' (3) 'the parties' relative access to relevant information;' (4) 'the parties' resources;' (5) 'the importance of the discovery in resolving the issues;' and (6) 'whether the burden or expense of the proposed discovery outweighs its likely benefit.'" *Morgan v. AMISUB (SFH), Inc.*, No. 18-cv-2042-TLP-tmp, 2020 U.S. Dist. LEXIS 162383 (W.D. Tenn. Sep. 4, 2020) (quoting Fed. R. Civ. P. 26(b)(1)). "Good cause exists if 'specific prejudice or harm will result' from the absence of a protective order." *Fears v. Kasich (In re Ohio Execution Protocol*

---

question these individuals about the *Adkisson* plaintiffs' constructive knowledge." Order at 8. The Magistrate fails to explain how questioning about a third-party deponent's personal and family medical histories could ever have any conceivable connection to an *Adkisson* Plaintiff's knowledge of when they became aware of any connection between coal ash and a claimed medical condition.

10

*Litig.)*, 845 F.3d 231, 236 (6th Cir. 2016) (quoting *Father M. v. Various Tort Claimants (In re Roman Catholic Archbishop)*, 661 F.3d 417, 424 (9th Cir. 2011). "A court must balance the right to discovery with the need to prevent fishing expeditions." *Id*. at 236-37 (quoting *Serrano v. Cintas Corp.*, 699 F.3d 884 (6th Cir. 2012)) (quotation marks omitted).

### 1. The importance of the issues at stake in the action

Two factors—each of which contrasts the other—illustrate that these lines of inquiry are unimportant to the issues at stake in the *Adkisson* cases. *First*, in relation to the *Adkisson* cases, the objectionable topics are more than unimportant—they are irrelevant, as discussed above. None of the objectionable topics have any direct or even tangential relevance to issues that will arise during the trials of the *Adkisson* consolidated cases. *Second*, in stark contrast, the objectionable topics are directly related to potentially case dispositive issues in the currently stayed cases of the third-party witnesses. Inquiry into medical histories and statute of limitations issues are extremely important to those cases and should only be the subject of examination after discovery has commenced in those actions. This counsels that the objectional questioning by Jacobs is in fact *not* proportional to the needs to defend the *Adkisson* cases.

### 2. The amount in controversy

The amount in controversy is quite large and plays equally into the considerations for both the *Adkisson* cases and the stayed cases of the third-party witnesses. This factor weighs evenly.

### 3. The parties' relative access to the relevant information

Jacobs already has access to all information concerning these witnesses that is *actually relevant* to the *Adkisson* cases. Plaintiffs disclosed the medical conditions claimed by these witnesses. They can be questioned about when they first received a diagnosis for each of those

11

conditions, and they can be questioned about what they observed at the Kingston Coal Ash Recovery Site both generally and with specific reference to the *Adkisson* plaintiffs. Beyond that, there is no information relevant to the *Adkisson* cases. This factor also weighs in favor of the objectionable topics not being proportional to Jacobs' needs to defend the *Adkisson* cases.

### 4. The parties' resources

Due to time constraints imposed by the upcoming discovery cutoff in the *Adkisson* consolidated cases, Plaintiffs' efforts are solely directed at completing discovery by November 13, 2020. There is insufficient time and resources at this juncture for Plaintiffs to gather sufficient information to properly defend against what amounts to *full merits* depositions of the third-party witnesses, particularly since those cases are stayed preventing formal discovery. This factor also demonstrates that the objectionable topics are disproportional to Jacobs' needs to defend the *Adkisson* cases.

### 5. The importance of the discovery in resolving the issues

As already described in detail above, none of the objectionable topics are in any way relevant to the issues that will arise during the *Adkisson* trials. Thus, the questions are unimportant to the resolution of any issues in these cases. They are only relevant and important for issues that will arise during the trials in the eventually cases of the third-party witnesses, which remain stayed currently. This further demonstrates that the objectionable topics are disproportional to the needs of the pending *Adkisson* cases.

### 6. Whether the burden or expense of the proposed discovery outweighs its likely benefit

Again, as described in detail above, there is no benefit to either party by questioning on these topics for purposes of the *Adkisson* cases. The only benefit is that these questions provide Jacobs with an unfair opportunity to conduct full party depositions of the third-party witnesses while their cases are stayed. Moreover, it is beyond doubt that once the stays in those cases are lifted, Jacobs will seek a *second* opportunity to conduct a second full deposition of each of these individuals. The specifics about how these lines of questions are oppressive and burdensome is explained fully in relation to Objection 2, below. In relation to this factor though, the objectionable topics provide a benefit solely for Jacobs at the expense of both the *Adkisson* Plaintiffs, who are being required to devote unnecessary time and resources to defend deponents against questions that should not be asked until the third-party witnesses' cases are being litigated, as well as the third-party deponents themselves whose cases are being prematurely and unfairly prejudiced by the Magistrate's refusal to place any limitations whatsoever on Jacobs' questioning. This final factor also weighs in favor of overturning the Magistrate's ruling, because the objectionable topics are not proportional to Jacobs' needs to defend the *Adkisson* cases.

### OBJECTION NO. 2

**The Magistrate erred in finding that the manner of Jacobs' depositions of third-party fact witnesses was not oppressive or unduly burdensome.**

Additionally, the Magistrate determined that "Plaintiffs have not established that the depositions of the third-party fact witnesses at issue are oppressive or unduly burdensome." Order at 7. "A strict definition does not exist for 'unreasonable or oppressive' requests, rather the Court must decide what meets this criteria on a case by case basis." *OMS Invs., Inc. v. Leb. Seaboard*

13

*Corp.*, Civil Action No. 08-2681 (AET), 2008 U.S. Dist. LEXIS 94165, at *6 (D.N.J. Nov. 18, 2008) (citing *Williams v. City of Dallas*, 178 F.R.D. 103, 109 (N.D. Tex. 1998)).

As Plaintiffs explained at the Motion Hearing, Jacobs' counsel unnecessarily prolongs the length of these depositions by asking a number of irrelevant, unnecessary, and rhetorical questions.[5]

> MR. SILVEY: . . . Even things as simple -- if the Court wants to discuss it in terms of being burdensome, they will -- and, again, it's perfectly appropriate for them to ask -- for each of the Adkisson plaintiffs, what they do is go down a list of all the plaintiffs and say, "Do you know this person; yes or no?" And they will say yes or no, and then they will come back and ask them questions about it. For a number of these witnesses, they will say, "Yes, I know the name only." "Do you know Greg Adkisson?" "I know that name." They will then come back and say, "You said you know Greg Adkisson's name. Do you know anything else about them?" "No." And then they will ask ten or 12 more questions. "So you don't know his work background?" "No." "So you don't know what his training was?" "No." "So you don't know what his initiation at the site was?" "No." "You don't know where he worked on the site?" So you've got another five minutes of questions -- two or three, five minutes of questions about stuff that obviously the answer is going to be no to. They have already said they don't know the person; they only know the name. There is no necessity to go into that. It simply extends the length of these depositions, and --
>
> THE COURT: Look, I don't have a problem – okay.
>
> MR. SILVEY: -- it's unnecessary.
>
> THE COURT: What's next? I don't have a problem with that. If someone says, "I know the name Adkisson," then I think they're entitled to say, "How do you know the name and what have you heard?"
>
> MR. SILVEY: Exactly. But beyond that, if they say, "I don't know anything," our position would be you don't need to ask 75 other questions about what specific things don't you know. That simply extends the length of the deposition.
>
> THE COURT: Okay. All right. What's next?

---

[5] *E.g.*, Kimberly Dishman Dep., at 89:1-91:16, Ex. D; Amanda McCann Dep., at 47:2-48:21, Ex. E; Kirk Wenzel Dep., at 137:17-140:3, Ex. C.

14

Mot. Hr'g Tr., Oct. 1, 2020 at 15:10-16:23, ECF No. 638.

In circumstances where Jacobs seek to depose more than two hundred (200) third-party witnesses and treating medical providers, anything that unnecessarily extends the lengths of these depositions is certainly unduly burdensome. Further, the unnecessary and irrelevant lines of questions are oppressive in that they appear designed to exhaust the witnesses. The most perilous lines of inquiry—those relating to statute of limitations issues—inevitably fall at the very end of the depositions, after the witnesses have had to endure hour upon hour of repetitive, unnecessary, and irrelevant questions about topics that are in no way calculated to lead to the discovery of evidence that would be admissible in the *Adkisson* trials. Prohibiting Jacobs counsel from asking questions that are either irrelevant or redundant will have the practical benefit of shortening the length of the depositions, thereby increasing the likelihood that most, or all, depositions may actually be completed by the November 13, 2020 discovery cutoff. More importantly, it will comport with the Federal Rules, which prohibits these sorts of unduly burdensome and oppressive questions.

## CONCLUSION

Based on the foregoing objections, Plaintiffs respectfully request that the Court reverse the Magistrate's Memorandum and Order denying their Renewed Motion for Protective Order, ECF No. 602. In sustaining these objections and overturning the Magistrate's erroneous Order, Plaintiffs request the scope of the third-party depositions should be limited in the manner suggested by Plaintiffs in their proposed Protective Order, ECF No. 599-1.

Respectfully submitted this 19th day of October, 2020.

**GREG COLEMAN LAW, P.C.**

By:*/s/ Louis W. Ringger, III*
Gregory F. Coleman, TN Bar No. 14092
Louis W. Ringger, III, TN Bar No. 33674
Adam A. Edwards, TN Bar No. 23253
Mark E. Silvey, TN Bar No. 13415
Justin G. Day, TN Bar No. 33267
William A. Ladnier, TN Bar No. 34316
800 S. Gay Street, Suite 1100
Knoxville, TN 37902
T: (865) 247-0080
F: (865) 522-0049
Email: billy@gregcolemanlaw.com
  greg@gregcolemanlaw.com
  adam@gregcolemanlaw.com
  mark@gregcolemanlaw.com
  justin@gregcolemanlaw.com
  will@gregcolemanlaw.com

**DAVIS & WHITLOCK, P.C.**
Gary A. Davis, TN Bar No. 009766
James S. Whitlock NC Bar No. 34303
(admission *Pro Hac Vice*)
21 Battery Park Ave, Suite 206
Asheville, NC 28801
T: (828) 622-0044
F: (828) 398-0435
Email: gadavis@enviroattorney.com
  jwhitlock@enviroattorney.com

**MARKET STREET LAW, PLLC**
James K. Scott, BPR #16893
Keith D. Stewart, BPR #17574
John Tyler Roper, BPR #21927
625 Market Street, 14th Floor
Knoxville, TN 37902
T: (865) 888-9995
F: (866) 245-0989
Email: jimscott264@gmail.com
  keithdstewart@gmail.com
  tylerroperlaw@gmail.com

**BRIDGEFRONT LAW GROUP PLLC**
John B. Dupree
616 W. Hill Ave, 2nd Floor
Knoxville, TN 37902
T: (865) 223-5184
Email: john.dupree@knoxtnlaw.com

**FRIEDMAN, DAZZIO, ZULANAS & BOWLING, PC**
Jeffrey E. Friedman, Ala. Bar No. asb-6868-n77j
(admission *Pro Hac Vice*)
3800 Corporate Woods Drive
Birmingham, AL 35242
T: (205) 278-7000
F: (205) 278-7001
Email: jfriedman@friedman-lawyers.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on October 19, 2020, a copy of the foregoing was filed electronically. Notice of filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access the filing through the Court's electronic filing system.

*/s/ Louis W. Ringger, III* _____
Attorney for Plaintiffs