# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| GREG ADKISSON, et al., | ) | |
|       Plaintiffs, | ) | |
| v. | ) | No.: 3:13-CV-505-TAV-HBG |
| JACOBS ENGINEERING GROUP, INC., | ) | |
|       Defendant. | ) | |
| _____ | ) | *Lead case consolidated with* |
| KEVIN THOMPSON, et al., | ) | |
|       Plaintiffs, | ) | |
| v. | ) | No.: 3:13-CV-666-TAV-HBG |
| JACOBS ENGINEERING GROUP, INC., | ) | |
|       Defendant. | ) | |
| _____ | ) | *as consolidated with* |
| JOE CUNNINGHAM, et al., | ) | |
|       Plaintiffs, | ) | |
| v. | ) | No.: 3:14-CV-20-TAV-HBG |
| JACOBS ENGINEERING GROUP, INC., | ) | |
|       Defendant. | ) | |
| _____ | ) | |
| BILL ROSE, | ) | |
|       Plaintiff, | ) | |
| v. | ) | No.: 3:15-CV-17-TAV-HBG |
| JACOBS ENGINEERING GROUP, INC., | ) | |
|       Defendant. | ) | |
| _____ | ) | |
| CRAIG WILKINSON, et al., | ) | |
|       Plaintiffs, | ) | |
| v. | ) | No.: 3:15-CV-274-TAV-HBG |
| JACOBS ENGINEERING GROUP, INC., | ) | |
|       Defendant. | ) | |
| _____ | ) | |
| ANGIE SHELTON, as wife and next of kin | ) | |
| on behalf of Mike Shelton, et al., | ) | |
|       Plaintiffs, | ) | |
| v. | ) | No.: 3:15-CV-420-TAV-HBG |
| JACOBS ENGINEERING GROUP, INC., | ) | |
|       Defendant. | ) | |
| _____ | ) | |

JOHNNY CHURCH,                           )
          Plaintiff,                     )
v.                                       )          No.:    3:15-CV-460-TAV-HBG
JACOBS ENGINEERING GROUP, INC.,          )
          Defendant.                     )
_____  )
DONALD R. VANGUILDER, JR.,               )
          Plaintiff,                     )
v.                                       )          No.:    3:15-CV-462-TAV-HBG
JACOBS ENGINEERING GROUP, INC.,          )
          Defendant.                     )
_____  )
JUDY IVENS, as sister and next of kin,   )
on behalf of JEAN NANCE, deceased,       )
          Plaintiff,                     )
v.                                       )          No.:    3:16-CV-635-TAV-HBG
JACOBS ENGINEERING GROUP, INC.,          )
          Defendant.                     )
_____  )


## MEMORANDUM OPINION AND ORDER

This matter is before the Court on plaintiffs' appeal [Doc. 732][1] of United States

Magistrate Judge H. Bruce Guyton's order [Doc. 728] granting defendant's motion to bar

late-filed expert reports [Doc. 715]. Defendant has responded [Doc. 735], plaintiffs have

replied [Doc. 740], and the matter is now ripe for the Court's review. For the reasons

explained below, plaintiffs' appeal [Doc. 732] is **DENIED**.

_____

[1]  All citations refer to the docket of *Adkisson et al. v. Jacobs Engineering Group, Inc.,* 3:13-cv-505-TAV-HBG. However, this Order is equally applicable to the motions filed in the related cases listed in the caption of this Order.

2

# I.    BACKGROUND

The Court adopts the following factual background from Judge Guyton's order [Doc. 728]. Defendant asked the Court to bar plaintiffs from providing an additional eight[2] expert reports that plaintiffs had indicated they intended to serve after their December 7, 2020, deadline. The Court previously ordered plaintiffs to disclose any expert testimony in accordance with Federal Rule of Civil Procedure 26(a)(2) by December 7, 2020 [Doc. 550]. In particular, the Court stated that the deadlines set in that order would "not be extended absent extraordinary circumstances" and "delays occasioned by discovery disputes . . . [or] the press of other business or work-related demands alone" would not constitute extraordinary circumstances [*Id.* at 2]. The parties later attempted to jointly stipulate to an adjusted expert discovery schedule, with separate dates for generic and plaintiff-specific experts [Doc. 567], but the Court found that such request was not well-taken, since the parties failed to cite extraordinary circumstances in their motion [Doc. 573, pp. 3–4].

According to defendant's motion to bar late-filed experts, despite this December 7, 2020, deadline, and the fact that plaintiffs had served numerous expert reports, plaintiffs nevertheless indicated that they intended to provide additional expert reports on the damages claimed by plaintiffs Clint Mannis, Dan Cody, Harvey Bass, Jimmy Kilby,

---

[2] Seven of the contested expert opinions are at issue here, specifically, the late-filed future damages expert reports for certain plaintiffs. Defendant also contested a late-filed expert relating to plaintiff Kaleb Rose, on behalf of William Rose, but plaintiffs do not appeal Judge Guyton's order as to that expert report [Doc. 732, p. 6 n.3].

3

Kevin Thompson, Mike McCarthy, and Roy Enoch Edmonds. In their response brief, plaintiffs explained that they were unable to produce the full reports of these damages experts because they waited to receive the full causation opinions before their expert, M. Salerno and Associates, could complete their full future damages calculations for these seven plaintiffs. Nonetheless, plaintiffs noted that they did provide defendant with the names and other necessary information for their experts, as well as their intention to disclose the seven additional reports with a full calculation of future damages when they were received. Plaintiffs later indicated that their expert had committed to completing the full reports for the seven individuals by December 31, 2020, at which time the reports would be disclosed to the defendant.

Judge Guyton concluded that plaintiffs had failed to timely disclose these expert opinions and had established neither extraordinary circumstances nor good cause for an extension of time to disclose such expert reports [Doc. 728, pp. 7–10]. Judge Guyton then found that, under Rule 37(c)(1), plaintiffs' failure to timely disclose the expert reports at issue was neither substantially justified nor harmless, and therefore, the reports should be automatically excluded [*Id.* at 10–14]. Plaintiffs now appeal that order [Doc. 732].

## II.    STANDARD OF REVIEW

The parties first dispute the appropriate standard of review. In their appeal motion, plaintiffs state that they "identify aspects of the Order that are clearly erroneous and/or contrary to law and should be reviewed de novo by the District Judge and set aside or modified to comply with prevailing law" [Doc. 732, p. 2]. However, under the section of

4

the motion labeled "Standard of Review," plaintiffs merely quote the general standard applicable for an appeal of a magistrate judge's order under 28 U.S.C. § 636, namely, that the Court may modify or set aside a magistrate judge's order if it is clearly erroneous or contrary to law, and cite no reason that the Court should review Judge Guyton's order *de novo* [*Id.* at 6].

Defendant argues that the appropriate standard is whether there was clear error or an abuse of discretion in Judge Guyton's order [Doc. 735, pp. 8–9]. Defendant also states that plaintiffs tacitly admitted that *de novo* is not the correct standard of review governing this motion, because they object to Judge Guyton's factual findings and related conclusion, instead of conclusions of law which contradict or ignore applicable precepts of law [*Id.* at 8, n.1].

In reply, plaintiffs contend that they explicitly requested *de novo* review [Doc. 740, p. 3]. Plaintiffs acknowledge that a magistrate judge's order is usually reviewed only for clearly erroneous factual findings or conclusions that are contrary to law, but contend that, here, because the ruling excluding expert proof on future damages potentially vitiates a portion of their claims, it is tantamount to a dispositive order warranting *de novo* review [*Id.* at 3–4].

Section 636 of Title 28 of the United States Code allows district judges, subject to certain exceptions, to "designate a magistrate judge to hear and determine any pretrial matter pending before the court." 28 U.S.C. § 636(b)(1)(A). Generally, a district judge may reconsider any pretrial matter determined under "subparagraph (A) where it has been

5

shown that the magistrate judge's order is clearly erroneous or contrary to law." *Id.* "A finding is clearly erroneous when the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. The question is not whether the finding is the best or only conclusion that can be drawn from the evidence, or whether it is the one which the reviewing court would draw." *Heights Cmty. Cong. v. Hilltop Realty, Inc.*, 774 F.2d 135, 140 (6th Cir. 1985).

Although this clearly-erroneous-or-contrary-to-law standard of review typically applies to an appeal of a magistrate judge's order on a pretrial motion, plaintiffs cite several cases in support of their contention that Judge Guyton's order is tantamount to a dispositive order, and therefore, should be reviewed *de novo* [Doc. 740, pp. 3–4]. First, in *F.H. v. Shelby County Schools*, the Western District of Tennessee noted that when a magistrate judge rules on a non-dispositive matter, the district court should apply the "clearly erroneous or contrary to law" standard of review, but if the magistrate judge rules on a dispositive motion, the district court should engage in a *de novo* review of all portions to which specific written objections have been made. No. 2:12-cv-2312-JTF-cgc, 2016 WL 10637101, *1 (W.D. Tenn. Dec. 30, 2016). In that case, the defendants argued that the denial of their motion to amend on grounds of futility was, in effect, a dispositive determination that should be reviewed *de novo*. *Id.* The district court noted that most district courts in the Sixth Circuit considered an order on a motion to amend non-dispositive, but, nevertheless, without further explanation, the court reviewed the order at issue *de novo*. *Id.*

6

In *Yang v. Brown University*, the District of Rhode Island acknowledged this same distinction in the standard of review to be applied depending on whether the magistrate judge's order was dispositive. 149 F.R.D. 440, 442 (D. R.I. 1993). There, the district court concluded that the magistrate judge's order crossed the line into dispositive decision-making because his "ruling vitiate[d] plaintiff's case" and was "tantamount to an involuntary dismissal." *Id.* at 442–43. The district court ultimately found that the exclusion of an expert witness as a sanction under Rule 37 was too harsh. *Id.* at 443.

Finally, in *Cine Forty-Second Street Theatre Corporation v. Allied Artists Pictures Corporation*, the Second Circuit, setting forth the procedural background of the case, noted that the magistrate judge "recommended to the district court that [plaintiff] be precluded from introducing evidence with respect to damages" as a sanction under Rule 37, which was "tantamount to a dismissal of [plaintiff's] damage claim, but left standing its claim for injunctive relief." 602 F.2d 1062, 1065 (2d Cir. 1979).

First, the Court finds that plaintiffs failed to sufficiently raise their argument that a *de novo* review should apply in their initial appeal motion [Doc. 732]. As the Court noted, *supra*, plaintiffs merely mentioned *de novo* review in the introductory paragraph of their motion, and then cited the ordinary standard of review under § 636 when discussing the relevant standard of review [*Id.* at 1, 6]. At no point did plaintiffs contend that the Court should apply a *de novo* review because Judge Guyton's order was tantamount to a dismissal of their claims, and therefore, should be treated as an order on a dispositive matter. And, because plaintiffs failed to raise this argument in their initial motion, defendant was never

permitted an opportunity to respond to this specific argument. As this Court has recognized, "[i]t is well-settled that a movant cannot raise new issues for the first time in a reply brief, because consideration of such issues deprives the non-moving party of its opportunity to address the new arguments." *Malin v. JPMorgan*, 860 F. Supp. 2d 574, 577 (E.D. Tenn. 2012). The Court finds that plaintiffs' brief reference to *de novo* review, without further explanation or argument, was insufficient to constitute raising the argument in their initial motion, as it failed to notice defendant or the Court of the exact nature of the argument. Therefore, the Court finds that plaintiffs waived their argument that Judge Guyton's order should be deemed dispositive and subject to *de novo* review.

Nevertheless, even if plaintiffs did not waive their argument that *de novo* review should apply, the Court nonetheless finds that it should not review Judge Guyton's order *de novo* in this instance. Although plaintiffs point to several cases indicating that a magistrate judge's pretrial order should be considered dispositive, and therefore subject to *de novo* review, when it "vitiates plaintiff's case" and is "tantamount to an involuntary dismissal," *see Yang*, 149 F.R.D at 442–43; *Cine*, 602 F.2d at 1065; *see also Bennett v. General Caster Serv. Of N. Gordon Co., Inc.*, 976 F.2d 995, 998–99 (6th Cir. 1992) (finding that an order on post-judgment Rule 11 sanctions is "dispositive" because it disposes of the only remaining issue in the case, the party's Rule 11 claim, and therefore, the district court should have reviewed the magistrate judge's opinion *de novo*), even plaintiffs' arguments do not support a finding that Judge Guyton's exclusion of seven expert reports on the issue of future damages is dispositive of those seven plaintiffs' claims.

8

Specifically, plaintiffs claim that this exclusion "*potentially* vitiates *a portion* of these plaintiffs' claims and "forestalls certain plaintiffs' ability to prove the *full extent* of their future damages." [Doc. 740, pp. 3–4 (emphasis added)]. The Court finds that these arguments only indicate that the exclusion of these expert witnesses might hamper *some* plaintiffs' ability to prove a *certain level* of future damages, but the record does not reflect that Judge Guyton's order is tantamount to an involuntary dismissal of any claim, including these plaintiffs' claims for future damages. The record does not even reflect that these experts would provide the only evidence of future damages for the seven plaintiffs at issue. Thus, the Court finds that the record does not support a finding that Judge Guyton's order excluding these expert reports should be deemed dispositive and, thus, potentially warrant a *de novo* review.[3] Instead, the Court will apply the generally applicable standard of review and determine whether the magistrate judge's order was clearly erroneous or contrary to law.

## III. ANALYSIS

### 1. Good Cause for Extension

Plaintiffs contend that Judge Guyton erred in finding that they failed to establish good cause for an extension of time to file the relevant expert reports [Doc. 732, p. 6]. They argue that they diligently attempted to meet the Court's deadline by disclosing the identities and proposed subject matter of the experts on time [*Id.* at 7]. Additionally,

---

[3] Nevertheless, even if the Court were to review Judge Guyton's order *de novo*, the Court is in agreement with Judge Guyton's weighing of the factors, and the Court would still uphold the order.

9

plaintiffs argue that Judge Guyton failed to separately address the *Dowling v. Cleveland Clinic Foundation*, 593 F.3d 472, 478 (6th Cir. 2010), factors regarding whether a party acted diligently [Doc. 732, p. 7]. And, plaintiffs contend, each of these factors supports a finding that they were not dilatory [*Id.* at 8–11].

Defendant responds that plaintiffs "attempt to evade the express requirement in this Court's two orders that they show 'extraordinary circumstances' for their delay, and instead, argue that they can show good cause" [Doc. 735, p. 9]. Defendant states that plaintiffs cannot meet the demanding standard of "extraordinary circumstances," because, as Judge Guyton found, the delay was entirely foreseeable to plaintiffs and is the type of "work-related demand" the Court warned would be insufficient [*Id.* at 9–10].

Nevertheless, defendant argues that, even if "good cause" was the appropriate standard, Judge Guyton correctly found that plaintiffs could not satisfy it [*Id.* at 10]. First, defendant argues that plaintiffs cannot possibly claim that they could not have anticipated and planned for a delay, especially when they had access to their medical records and doctors for four to seven years [*Id.*]. Second, defendant states that plaintiffs have, for the first time, raised the COVID-19 pandemic as a basis for an extension, but, because they failed to raise this argument before Judge Guyton, they have waived it [*Id.* at 10–11]. And, defendant contends that, if this argument were not waived, plaintiffs should have sought an extension before the deadline instead of unilaterally granting themselves a 25-day extension [*Id.* at 11]. Third, defendant contends that, not only do plaintiffs have no legal support that good cause is satisfied by "informing" the opposing party of the delay, but

10

plaintiffs have also misled the Court about their efforts, as plaintiffs only informed defendant of the delay on the evening of December 7, 2020, the day of the deadline [*Id.* at 11]. Moreover, defendant states that plaintiffs did not even meet the extended deadline of December 31, 2020, that they purported to grant themselves, and did not serve the reports until January 1, 2021 [*Id.* at 11–12]. Finally, defendant contends that plaintiffs were required to show "excusable neglect" because they did not seek an extension before their discovery deadline, but plaintiffs made no attempt to show excusable neglect [*Id.* at 12].

Plaintiffs reply that they have established both "good cause" and "extraordinary circumstances" for their post-deadline disclosure of the relevant expert reports [Doc. 740, p. 4]. They contend that they are not claiming "extraordinary circumstances" based on the press of other business or work-related demands alone but highlight their efforts at providing discovery to illustrate their diligence despite the challenges presented by the COVID-19 pandemic [*Id.* at p. 4 n. 3]. Plaintiffs contend that these circumstances were sufficiently extraordinary to warrant modest, limited relief from the expert disclosure deadline [*Id.* at 5]. Plaintiffs also assert that they have not waived any argument regarding the COVID-19 pandemic, because they raised it repeatedly, including before Judge Guyton [*Id.* at 7–8].

Rule 16(b)(a) states a court's scheduling order "may be modified only for good cause and with the judge's consent." In determining whether "good cause" has been shown, the primary consideration is "the moving party's diligence in attempting to meet the case

management order's requirements." *Commerce Benefits Grp., Inc. v. McKesson Corp.*, 326 F. App'x 369, 377 (6th Cir. 2009) (internal quotations omitted) (quoting *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 625 (6th Cir. 2002)). Additionally, whether the nonmoving party would be prejudiced by the modification is a relevant factor to consider. *Id.* However, even in the absence of prejudice, the moving party must nonetheless demonstrate "good cause" for "why he failed to move for the amendment at a time that would not have required a modification of the scheduling order." *Korn v. Paul Revere Life Ins. Co.*, 382 F. App'x 443, 450 (6th Cir. 2010) (citing *Leary v. Daeschner*, 349 F.3d 888, 906–08 (6th Cir. 2003)).

Additionally Rule 6(b)(1)(B) provides that a "court may, for good cause, extend the time . . . on motion made after the time has expired if the party failed to act because of excusable neglect." The Supreme Court has set out five factors that courts are to balance in determining whether excusable neglect exists:

> (1) the danger of prejudice to the nonmoving party, (2) the length of the delay and its potential impact on judicial proceedings, (3) the reason for the delay, (4) whether the delay was within the reasonable control of the moving party, and (5) whether the late-filing party acted in good faith.

*Nafziger v. McDermott Int'l, Inc.*, 467 F.3d 514, 522 (6th Cir. 2006) (citing *Pioneer Inv. Serv. Co. v. Brunswick Assocs. P'ship*, 507 U.S. 380, 395 (1993)).

In *Century Indemnity Company v. Begley Company*, the Eastern District of Kentucky highlights the somewhat confusing relationship between Rule 6 and Rule 16, and the inconsistency with which courts have applied the rules. 323 F.R.D. 237, 240–41 (E.D. Ky. 2018) (citing numerous cases from various circuits demonstrating that the application and overlapping relationship of Rule 6(b)(1)(B)'s "excusable neglect" standard and

12

Rule 16's "good cause" standard is muddled). While the Sixth Circuit in *Leary*, 349 F.3d at 905–09, applied Rule 16's "good cause" standard when the plaintiff sought to amend the complaint after the relevant deadline had passed, the Eastern District of Kentucky also recognized that "no Sixth Circuit case has ever held that Rule 6(b) does not apply" in similar circumstances. *Century Indem. Co.*, 2018 WL 272576 at *2 (citing *First Tech. Cap., Inc. v. BancTec, Inc.*, No. 5:15-CV-138, 2017 WL 2735516, at *4 n.7 (E.D. Ky. June 26, 2017)).

Indeed, this Court and District have applied Rule 6 in instances where a party has requested an extension of time to an already-expired deadline. *See Barnes v. Malinak*, No. 3:15-CV-556-PLR-HBG, 2017 WL 3161686, at *1 (E.D. Tenn. July 25, 2017) (finding plaintiff had not shown "good cause" but also concluding that "excusable neglect" was not demonstrated under Rule 6); *Am.'s Collectibles Network, Inc. v. Syndicate 1414*, No. 3:08-CV-96, 2009 WL 2929417, at *1 (E.D. Tenn. Sept. 8, 2009) ("[T]his Court may only grant an extension of this deadline for good cause and upon a showing by defendants that their failure to file a dispositive motion prior to the July 17, 2009 deadline was due to excusable neglect."). Thus, regardless of whether Rule 6 or Rule 16 is more applicable, the movant must nonetheless demonstrate "good cause," a standard enumerated in both rules. *See Century Indem. Co.*, 323 F.R.D. at 241 ("But regardless of which rule applies, the movant must first show 'good cause.'").

Regardless of the usual standard, in this case, the Court specifically instructed the parties that the disclosure of expert testimony for plaintiffs was December 7, 2020, and

13

cautioned the parties that "[t]hese deadlines will not be extended absent extraordinary circumstances." [Doc. 550]. In fact, the Court informed the parties that "delays occasioned by discovery disputes would not constitute an extraordinary circumstance for purposes of this Order, nor would the press of other business or work-related demands alone" [*Id.* at 3 n.1]. Rule 26 explicitly permits the Court to determine, in its discretion, the appropriate deadline for expert disclosures. *See* Fed. R. Civ. P. 26(a)(2)(D) (stating that "[a] party must make [their expert witness disclosures] at the times and in the sequence that the Court orders"). And, here, the Court provided approximately six months for the disclosure of plaintiffs' expert witnesses, from the date of its scheduling order on June 10, 2020 [Doc. 550]. Given the length and complex nature of these cases, as well as the significant delays that have resulted from a variety of factors, the Court found it necessary to exercise its inherent power to manage its docket "with a view toward the efficient and expedient resolution" of these cases, *see Dietz v. Bouldin*, 136 S. Ct. 1885, 1889 (2016), and limit the grounds for extension of these expert deadlines to only "extraordinary circumstances."

In light of its prior order requiring a showing of "extraordinary circumstances," which the Court repeatedly emphasized in other orders [*see* Doc. 566, 573], the Court finds that the most appropriate standard to apply in determining whether an extension of time for plaintiffs to disclose the relevant expert testimony here is whether they have established "extraordinary circumstances." And, given that plaintiffs' delay is apparently the result of the timing of the completion of their own causation expert reports, which is a work-related

14

demand, the Court finds that plaintiffs have not established "extraordinary circumstances." Nevertheless, as discussed below, even under the more lenient standard of "good cause," the Court finds that plaintiffs have not shown that the magistrate judge clearly erred in finding that they did not establish good cause for an extension.

In *Dowling*, the Sixth Circuit set forth five factors to consider in reviewing a district court's denial of additional time for discovery: (1) when the moving party learned of the issue that is the subject of discovery; (2) how the discovery would affect the ruling below; (3) the length of the discovery period; (4) whether the moving party was dilatory; and (5) whether the adverse party was responsive to prior discovery requests. 593 F.3d at 478. The Court noted that "[t]he overarching inquiry in these overlapping factors is whether the moving part was diligent in pursuing discovery." *Id.*

The Court first notes that, in his order, Judge Guyton specifically cited these factors and then concluded that, based on the specific facts presented, plaintiffs did not act diligently in attempting to meet their original expert disclosure deadline [Doc. 728, p. 9]. Plaintiffs appear to complain that Judge Guyton did not fully analyze each of the *Dowling* factors separately. But the Court finds no clear error in Judge Guyton's decision not to provide an extensive analysis on each individual factor. And, regardless, even considering each of the factors, the Court does not find any error, clear or otherwise, in Judge Guyton's conclusion that plaintiffs did not act diligently with regard to the relevant expert disclosures.

15

The first factor involves when plaintiffs learned of the subject of the discovery at issue. *See Dowling*, 593 F.3d at 478. Plaintiffs argue that, while they knew that their damages experts would rely on their causation experts, they did not know that the causation expert reports would be delayed [Doc. 732, p. 8]. But, because plaintiffs knew that the future damages experts would rely on the causation experts, plaintiffs should have foreseen that a delay in the causation expert reports would result in a delay for the future damages expert reports, and plaintiffs could have set earlier deadlines for the completion of their causation expert reports. Moreover, because plaintiffs knew that their future damages experts would rely on their causation experts, plaintiffs must have become aware that their future damages expert reports might not be completed by the December 7, 2020, deadline when they first learned that their causation expert reports were delayed. And yet, at no point prior to the December 7, 2020, deadline did plaintiffs seek an extension of time for expert disclosures on this ground. Accordingly, the Court finds that plaintiffs had adequate time to, at minimum, request an extension of time for the future damages expert reports based on the delay of the causation expert reports.

The second factor is how the discovery would affect the ruling below. *See Dowling*, 593 F.3d at 478. Plaintiffs state that, if the Court grants the extension, little will change for defendant, and if defendant wishes to disclose additional experts on future damages based on this delay, plaintiffs will stipulate to such extension [Doc. 732, p. 9]. Plaintiffs seem to rely primarily on the fact that the Phase II trial(s) have not been scheduled, asserting that the trial(s) will not be affected by the late disclosure of these expert reports.

16

But the Court established specific expert disclosure deadlines to assist the parties in the prompt preparation of these cases for trial, given the complex and lengthy nature of this litigation. Plaintiffs' failure to meet their expert disclosure deadline, which then resulted in this lengthy discovery dispute, has certainly delayed the proceedings and the scheduling of Phase II trial(s). Thus, while there are no scheduled Phase II trial(s) at this point, the Court cannot find that plaintiffs' delayed expert reports had no impact on the prompt proceeding of these cases.

The third factor to be considered is the length of the discovery period. *See Dowling*, 593 F.3d at 478. As to this factor, plaintiffs argue that a stand-alone request for an extension would have been futile because the Court previously denied their motion for an extension based on the COVID-19 pandemic, and if such was insufficient for an extension, the present facts would not meet the requirements of extraordinary circumstances [Doc. 732, p. 9]. Notably, plaintiffs' argument does not address the actual length of the discovery period, but rather, provides an excuse for why plaintiffs failed to seek an extension of the expert disclosure deadline prior to the expiration of such deadline. As the Court noted previously, it provided approximately six months from the date of its scheduling order [Doc. 550] for plaintiffs' disclosure of expert witnesses. This was a lengthy period of time, and plaintiffs provide no specific argument that six months was insufficient.

The Court pauses here to address plaintiffs' specific argument that a request for an extension of their expert disclosure deadline would have been futile. Specifically,

"Plaintiffs believed the present facts would certainly fail to meet the Court's threshold requirement for extraordinary circumstances," [Doc. 732, p. 9] and therefore, rather than requesting an extension, sought to disclose only the names of the relevant future damages experts by the Court's deadlines, and disclosing their expert reports at a later date. Yet, "[d]eadlines are important things. And when the Court establishes deadlines, the parties are obliged to follow them." *Century Indem. Co.*, 323 F.R.D. at 239. If plaintiffs believed, as they assert, that the circumstances that led to their late disclosure of the relevant expert witnesses would not have constituted "extraordinary circumstances" as required by the Court, then plaintiffs should have ensured that they met the Court's deadline. A belief that the Court would not grant an extension of a deadline does not provide grounds for noncompliance with the deadline.

Fourth, the Court considers whether plaintiffs were dilatory. *See Dowling*, 593 F.3d at 478. Plaintiffs state that they informed defendant of the delay once they discovered it and the delay was caused by their medical experts' involvement in combatting the COVID-19 pandemic,[4] not any dilatory effort on plaintiff's part [Doc. 732, p. 10]. But, as defendant points out, disclosing the delay to the other party is not sufficient for expert disclosures under the Federal Rules. And plaintiffs failed to make any request for an extension of their expert disclosure deadline on this ground. Moreover, as noted above,

---

[4] The Court notes that plaintiffs' reliance on the COVID-19 pandemic as grounds for their delayed filing is likely waived because they did not present this specific argument to the magistrate judge in their initial argument in opposition to defendant's motion to bar these expert witnesses. Nevertheless, the Court declines to specifically address the waiver argument, as the Court does not find plaintiffs' argument compelling in any event.

18

plaintiffs knew that their future damages experts would rely on their causation experts, and could have set deadlines to ensure that the causation expert reports would be completed with sufficient time left for the future damages experts to review them. To the extent that plaintiffs point to the COVID-19 pandemic as an explanation for the delay, while the Court certainly understands that the circumstances of the pandemic created logistical problems in many fields, including the legal field, plaintiffs had approximately nine months from the district court's recognition of the COVID-19 pandemic as a public health emergency [*see* E.D. Tenn. SO 20-06 (recognizing the COVID-19 pandemic as an emergency on March 16, 2020)], which included the entire six-month period between the Court's scheduling order [Doc. 550] and plaintiffs' deadline. Thus, the Court established this deadline with the COVID-19 pandemic in mind, and plaintiffs had sufficient time to prepare their expert reports in this environment, or, at least, to request an extension based on the specific facts at issue here.[5] Because plaintiffs failed to even request an extension

---

[5] Plaintiffs point to their July 3, 2020, request for the Court to extend all deadlines by six months in light of the COVID-19 pandemic [Doc. 560], which the Court denied [Doc. 566]. Notably, in their motion, plaintiffs did not point to any issues with obtaining their expert reports in a timely manner, due to their experts' involvement in combatting COVID-19, but rather, pointed to the generic concern of ensuring the health of all parties [Doc. 560]. Furthermore, Judge Guyton's order, declining to reset the discovery deadlines on this ground, stated that the Court could not find that discovery could not be accomplished by the deadlines when the parties were not engaging in discovery, and concluded that "Plaintiffs' request is simply premature" [Doc. 566]. Nothing about that ruling precluded plaintiffs from filing another motion for an extension based on delays in obtaining their expert reports. Indeed, this ruling does not even indicate that the COVID-19 pandemic could not result in "extraordinary circumstances" for the extension of deadlines, but simply indicated that more specific facts of the impact of the COVID-19 pandemic on the progression of discovery were necessary to such finding.

19

based on these facts, and instead, simply decided to disclose the expert reports after the Court's deadline, the Court finds that plaintiffs were dilatory.

The final *Dowling* factor is whether the adverse party was responsive to prior discovery requests. *See Dowling*, 593 F.3d at 478. Plaintiffs contend that this factor is not relevant here as both parties have cooperated through fact discovery [Doc. 732, pp. 10–11]. The Court agrees that this factor is less relevant in this circumstance, but the Court does note that there is no allegation that defendant has been untimely in its discovery disclosures or that any delay on defendant's part is the cause of plaintiffs' delay.

Considering all of these factors, the Court is in agreement with Judge Guyton's conclusion that plaintiffs have not established "good cause" or "extraordinary circumstances" for their untimely disclosure of the relevant future damages expert witnesses.

### 2. Prejudice to Defendant

Next, plaintiffs argue that Judge Guyton erred in finding that defendant would be prejudiced by the untimely filing of the relevant expert opinions [Doc. 732, p. 11]. Plaintiffs reiterate that, if defendant wishes to challenge plaintiffs' damages experts, such would necessarily be rebuttal, which is still permitted [*Id.* at 12]. Further, plaintiffs contend that allowing their untimely expert opinion disclosures would not affect any other scheduling in this case, because no future deadlines have been set [*Id.* at 12–13].

Defendant responds that, because plaintiffs cannot show good cause, there is no need to examine the potential prejudice in this case [Doc. 735, p. 13]. Regardless,

20

defendant contends that it has been prejudiced, because, to respond to the damages reports that plaintiffs did serve on time, defendant needed several expert witnesses, and it has already timely submitted its expert reports on medical causation for the seven plaintiffs at issue [*Id.*].

Plaintiffs reply that simply having to respond to their damages experts is not unfair prejudice to defendant [Doc. 740, p. 6]. They assert that, but for the exigencies that caused the delay, defendant would still have faced the same "prejudice" when the expert disclosures were timely filed [*Id.* at 7].

The Court notes that "the absence of prejudice to the opposing party is not equivalent to a showing of good cause." *Permasteelisa CS Corp. v. Airolite Co.*, No. 2:06-cv-0569, 2007 WL 1683668, *1 (S.D. Ohio June 8, 2007) (citations omitted); *see Korn*, 382 F. App'x at 450. Rather, as the Court previously stated, "the touchstone of the good cause inquiry . . . is whether the moving party acted diligently in attempting to meet the deadline set forth in the pretrial order." *Permasteelisa CS Corp.*, 2007 WL 1683668 at *2.

Given that prejudice to defendant is not necessary to the "good cause" analysis, even if the Court were to apply the "good cause" standard rather than the "extraordinary circumstances" standard, the Court does not find any need to address in detail plaintiffs' arguments about the prejudice that defendant would or would not suffer. Because the Court has concluded that plaintiffs did not act diligently in attempting to meet the Court's December 7, 2020, expert disclosure deadline, the "good cause" inquiry ends there. Thus,

21

even if Judge Guyton erred in finding that defendant would be prejudiced,[6] he did not err in nevertheless holding that plaintiffs had not established "good cause."

### 3. Exclusion under Rule 37(c)(1)

Finally, plaintiffs contend that Judge Guyton erred in finding that the delay in disclosing the relevant expert opinions was not substantially justified or otherwise harmless, and therefore, excluding the experts under Rule 37(c)(1) [Doc. 732, p. 15]. Plaintiffs argue that Judge Guyton's finding that defendant was surprised by plaintiffs delay to disclose the complete reports in part due to "plaintiffs' continuous delays in identifying which conditions they claim were caused by fly ash," is reversible error because plaintiffs disclosed the names of the damages experts such that defendant was aware that the expert reports were meant to fully calculate plaintiffs' future damages [*Id.* at 16]. Moreover, plaintiffs contend that any surprise is cured by the Court's scheduling order which allows defendant 30 days to submit rebuttal evidence [*Id.* at 17]. Plaintiffs highlight that no trial has been set for Phase II yet, and, in light of the COVID-19 pandemic, such trial may not be set for some time [*Id.*]. Plaintiffs also argue that each experts' future damages calculation are paramount to establishing future damages, and their failure to disclose was due to unforeseen circumstances, namely, the COVID-19 pandemic [*Id.* at 18].

---

[6] Reviewing the record, *de novo*, however, the Court is in full agreement with Judge Guyton's conclusion that defendant would be prejudiced by the delay in discovery created by plaintiffs' belated disclosure of their future damages expert reports.

22

Defendant responds that, because plaintiffs did not raise Rule 37 below, or contend that their exclusion of late experts was improper under Rule 37(c)(1), they have waived this argument [Doc. 735, pp. 13–14]. Nevertheless, defendant contends that plaintiffs cannot meet the standards of Rule 37(c)(1), because they were not diligent, and defendant was prejudiced [*Id.* at 14].

Plaintiffs reply that they have not waived any argument under Rule 37(c)(1), because Judge Guyton explicitly discussed this rule as a basis for his exclusion of the expert reports, and thus, it is a proper ground for objection [Doc. 740, pp. 8–9]. Plaintiffs also point out that this Court previously found, at the Phase I stage, that exclusion of plaintiffs' late-filed expert report was not appropriate under Rule 37(c)(1), and the rationale supporting that finding applies equally in this instance [*Id.* at 9–10].

Federal Rule Civil Procedure 37(c)(1) provides, "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Courts have applied Rule 37(c)(1) in the context of a moving party's failure to show "good cause" or "excusable neglect." *See Kassim v. United Airlines, Inc.*, 320 F.R.D. 451, 453 (E.D. Mich. 2017) (determining first whether the plaintiff's failure to timely file expert disclosures was due to excusable neglect and then determining whether the delay was substantially justified as to avoid Rule 37(c)(1)'s sanction of exclusion).

23

Courts have explained, "Federal Rule of Civil Procedure 37(c)(1) requires absolute compliance with Rule 26(a); that is, it 'mandates that a trial court punish a party for discovery violations in connection with Rule 26 unless the violation was harmless or is substantially justified.'" *Hunt v. Hadden*, 127 F. Supp. 3d 780, 789 (E.D. Mich. 2015), aff'd, 665 F. App'x 435 (6th Cir. 2016) (quoting *Roberts ex rel. Johnson v. Galen of Virginia, Inc.*, 325 F.3d 776, 782 (6th Cir. 2003)) (other citations omitted). The burden is on the potentially sanctioned party to prove harmlessness. *Id.* (citing *Roberts ex rel. Johnson*, 325 F.3d at 782).

The Court considers five factors in determining whether plaintiffs' delay in disclosing their future damages expert reports was "substantially justified" or "harmless:"

> (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence.

*Howe v. City of Akron*, 801 F.3d 718, 748 (6th Cir. 2015) (quoting *Russell v. Absolute Collection Servs., Inc.*, 763 F.3d 385, 396–97 (4th Cir. 2014)). However, the Sixth Circuit has cautioned that "[d]istrict courts have broad discretion in applying these factors and need not apply each one rigidly." *Bisig v. Time Warner Cable, Inc.*, 940 F.3d 205, 219 (6th Cir. 2019) (internal quotation marks omitted). Instead, "[t]he factors simply lend themselves to the task at the heart of Rule 37(c)(1): separating 'honest,' harmless mistakes from the type of 'underhanded gamesmanship' that warrants the harsh remedy of exclusion." *Id.* (internal quotation marks omitted).

As an initial matter, the Court declines to find that plaintiffs waived their arguments regarding the factors to be considering in determining whether exclusion is appropriate under Rule 37(c)(1), although they did not present such arguments before the magistrate judge, because these arguments are in direct response to the magistrate judge's order. Accordingly, the Court will address those factors.

First, the Court looks to the surprise to defendant. *See Howe*, 801 F.3d at 748. Plaintiffs argue that defendant will not suffer any surprise, because they disclosed the names of the relevant experts to defendant by the initial disclosure deadline [Doc. 732, pp. 15–16]. But, disclosure of the names of forthcoming experts does not mean that defendant will not be surprised by the contents of the late-disclosed expert reports, and plaintiffs provide no argument about the actual contents of the reports. The Court finds that there is a reasonable likelihood that defendant will be surprised by the contents of the reports, and further, was surprised by plaintiffs' failure to disclose these reports by the deadline, despite learning the names of the relevant experts on the disclosure deadline. This factor weighs against plaintiffs.

Second, the Court considers defendant's ability to cure any surprise. *See Howe*, 801 F.3d at 748. The Court agrees with plaintiffs that defendant will have some ability to cure this surprise, based on the extended deadline for disclosing rebuttal experts, as well as plaintiffs' agreement to stipulate to any necessary extension for disclosure of rebuttal experts that arises based on their late filing of these future damages experts [Doc. 732, p. 9]. However, defendant may still face some difficulty curing the surprise at this late

25

stage, after the period the Court established for expert disclosures has long passed. Accordingly, this factor is neutral.

Third, the Court considers the extent to which allowing plaintiffs' late-filed expert witnesses would disrupt the trial. *See Howe*, 801 F.3d at 748. Plaintiffs argue that this factor weighs in their favor because no Phase II trial(s) have been set in these cases yet, and such trial(s) may not be set for some time, given the COVID-19 pandemic [Doc. 732, pp. 17–18]. But, as Judge Guyton stated, "permitting this evidence would disrupt the carefully planned discovery schedule the Court has put in place so these cases can promptly proceed to trial" [Doc. 728, p. 13]. The Court has repeatedly emphasized in this order that it established the relevant discovery deadlines, and prohibited extension except in "extraordinary circumstances," to ensure the expeditious proceeding of these cases, some of which have been pending before the Court since 2013. Despite Judge Guyton highlighting this fact, plaintiffs nonetheless have not addressed this concern. Accordingly, the Court finds that this factor weighs in favor of exclusion.

Fourth, the Court addresses the importance of the evidence to plaintiffs' case. *See Howe*, 801 F.3d at 748. Plaintiffs contend that these expert reports are of "paramount importance" to proving each plaintiffs' claim for future damages [Doc. 732, p. 18]. The Court does not doubt that the evidence is important to the relevant plaintiffs' claims for future damages, and this factor may weigh in plaintiffs' favor. But this factor alone is not sufficient to constitute a showing that the delay in disclosure is substantially justified or harmless, and a party cannot establish that late-disclosed evidence should be exempted

26

from Rule 37(c)(1)'s rule of exclusion simply because it is important to their case. Instead, parties should be mindful that important evidence must be disclosed in a timely manner, or they must seek an extension of time from the Court prior to the deadline.

Fifth, the Court considers plaintiffs' explanation for their failure to timely disclose these expert reports. *See Howe*, 801 F.3d at 748. The Court has extensively addressed this issue in this order. And, as the Court previously determined, plaintiffs could have planned for the delay by setting deadlines for their causation expert reports and, further, could have requested an extension of their expert disclosure deadline in light of the specific circumstances here. This factor does not support a finding that the delay was substantially justified or harmless.

The Court notes that plaintiffs point to the Court's ruling on the admission of their late-disclosed Phase I expert, Dr. Paul Terry, under Rule 37(c)(1), and contend that more of the *Howe* factors support admission here than in the Court's Phase I order [Doc. 740, pp. 9–10]. However, as the Court just discussed, only one of the *Howe* factors potentially supports admission of the expert witnesses at issue here. The Court also notes that, in its prior order, involving Dr. Terry, it found that plaintiffs had not acted diligently in seeking an extension of time and therefore could not demonstrate "good cause" or "excusable neglect" for their delay in seeking modification of the expert disclosure deadline [Doc. 235]. Rather than supporting admission of the expert witnesses in this case, plaintiffs' history of failure to timely disclose expert witnesses, and failure to act diligently

27

in seeking extension of expert disclosure deadlines, supports a finding that plaintiffs' experts should be excluded as a sanction under Rule 37(c)(1) in this instance.

For all these reasons, the Court finds that plaintiffs have not met their burden of establishing that their delayed disclosure of the relevant expert witnesses was "substantially justified" or "harmless," and thus, the Court agrees with Judge Guyton's conclusion that the evidence should be excluded.

## IV. CONCLUSION

For the reasons stated above, plaintiffs' appeal [Docs. 732] of United States Magistrate Judge H. Bruce Guyton's order [Doc. 728] granting defendant's motion to bar late expert reports [Doc. 715] is **DENIED**.

IT IS SO ORDERED.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE

28